WILLIAM JOACHIM, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 27227.)

Court of Claims, July 22, 1943.

*George Rosling* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Mortimer H. Michaels* of counsel), for defendant.

GREENBERG, J. On April 26, 1942, claimant William Joachim, while visiting at Pilgrim State Hospital, was injured when an inmate caused a door to be closed on his hand. Claimant has charged the State with negligence in the maintenance of the hospital in failing to control the activities of said inmate and in permitting her access to the small visiting room and its immediate vicinity unattended. A brief resume of the pertinent facts surrounding the accident follows:

Pilgrim State Hospital is maintained by the State of New York at Brentwood, Long Island, for the care of insane persons. For several months prior to April 26, 1942, Winifred Joachim, a sister of the claimant, was a patient of the hospital, confined in ward 6 on the third floor of building No. 24. On that day claimant came to the hospital at about twelve noon to visit his sister. Visiting hours on Sundays were between 10:00 A. M. and 4:00 P. M. In accordance with the usual procedure, claimant presented his visitor's pass on arrival at the building, ascended two flights of stairs to a locked door, knocked thereon and was admitted by a nurse to the rotunda. They then went to another locked door, which the nurse opened. She thereupon led the claimant through a long corridor to an office, where he presented his pass for indorsement. After having the pass returned to him, he was led by the nurse to the end of the corridor into room 3/29, which was the large visiting room and which was then occupied by approximately sixteen patients and visitors. After completing the morning visit in this room, claimant obtained permission and left the building.

At about 3:15 P. M. claimant returned to continue his visit with his sister, going through the same steps heretofore described and was with his sister in the large visiting room for about fifteen minutes. At 3:30 P. M. a nurse entered this room and announced that those desiring to continue their visit were to adjourn to room 3/15, the small visiting room located off the rotunda.

The large visiting room (room 3/29) is a dormitory, from which the beds were removed to accommodate the many visitors present during the earlier visiting hours. At about 3:30 P. M., as was customary, most of the visitors had left in order to catch

the train leaving Brentwood at 3:40 P. M. The few remaining visitors were then required to adjourn to the small visiting room (room 3/15) situated beyond the corridor and abutting on the rotunda. After the parties had left the large visiting room, attendant Walter proceeded to take five or six inmates from the day room (room 3/11) to the large visiting room, for the purpose of readjusting the room.

Included in this group was the inmate, Grace McAllister, who a year prior thereto had been admitted to this institution from Bellevue Hospital, with a record of having dangerous tendencies, being potentially dangerous to herself and having suicidal thoughts. The history of this patient at Pilgrim State Hospital reveals that from time to time she was confined in a camisole (straight jacket); that as late as March 30th she was so restrained in order to prevent her from engaging in acts of violence; that in the month of March, 1942, she was involved in a quarrel with another patient, whom she bit; that she was extremely antagonistic toward other patients; and that she was overactive. There was no hospital record of her activities during April, 1942, up to the date of the accident. However, we have the statement of Dr. Worthing, superintendent of the hospital, that up to the time of the accident, and for some time prior thereto, Grace McAllister had been in a manic state.

While with attendant Walter in the dormitory (room 3/29), Grace McAllister obtained permission to go to the patients' toilet. She then proceeded to enter the long corridor, which was lined on both sides with unlocked rooms occupied by patients in restraining sheets. At the end of this sixty-foot corridor she opened a door leading to the rotunda, which door at the time was unlocked. Instead of proceeding to the far end of the rotunda to the toilet (room 3/6) she entered the small visiting room in which the claimant, his sister, and a visitor named Sailer and his inmate wife were seated.

This room was approximately seventeen feet long and eleven feet wide, with the door leading into it opening into the rotunda and at all times wide open. Claimant and his sister occupied two of the chairs near the entrance and the visitor Sailer and his wife the two chairs at the other end of the room. In the center was a table, upon which were packages of fruit and articles brought by Sailer to his wife.

When Grace McAllister, who had received no visitors that day, entered this room, she conducted herself boisterously and made certain menacing gestures toward the occupants. Spying the fruit and articles on the table, she attempted to touch same,

but, on being reproached by Sailer, she started to hurl them about the room and at the occupants. The claimant, in attempting to protect his sister and himself from the flying articles and from a possible assault by the inmate McAllister, arose, and in so doing stumbled over a nearby chair. In attempting to regain his balance, claimant for the moment rested his right hand against the wall in such fashion that his fingers were between and within the crack of the door formed by the hinged edge and the door jamb. While the claimant was in such position, and before he had sufficient opportunity to compose himself, the inmate Grace McAllister dashed out of the room and violently slammed the door shut so that the claimant's hand and fingers were caught and severely injured.

At the time of the accident, there were fifty-one patients in this ward, under the care and supervision of five attendants on duty at different stations. Two of the attendants were in the day room caring for approximately forty of the patients. Another (Boles) was assigned to the patients' toilet, but she was not there at the time of the accident. She was, however, in the employees' toilet located off the long corridor. The attendant Walter was in the dormitory, used as the large visiting room, with the five inmates assisting her. The attendant Watts was assigned to the rotunda to "look after visitors, seeing that they got in and out, and any patients that happened to be in that section at the time."

When attendant Walter permitted Grace McAllister to leave the large visiting room and to go down the long corridor toward the rotunda, she did not have her in full view. She assumed, however, that attendant Watts would be on duty in the rotunda and would be ever watchful that the patient did not deviate from her course to the patients' toilet, and that attendant Watts, in turn, would then permit the patient to enter the toilet upon the assumption that attendant Boles would be inside and that the latter would continue to keep the patient under observation.

However, when Grace McAllister left the large visiting room unattended and proceeded beyond the view of attendant Walter, she went down the long corridor into the rotunda. The door leading thereto was kept unlocked at the time. After entering the rotunda, she went into the small visiting room unobserved and unrestrained. Attendant Watts, who was obliged to be on duty in the rotunda, failed to notice her. The excuse proffered by Watts was that at that time she was permitting another visitor egress from the rotunda. Whether such was the fact or not, it is obvious that the patient McAllister was permitted to

enter the rotunda through an unlocked door and that none of the attendants observed her in the rotunda or prevented her from entering the small visiting room.

State's witness, Sailer, testified that in his twelve previous visits in this hospital, an attendant was always present in the small visiting room during the visiting hours. However, on the day in question, there was no such attendant.

The State failed in its duty to the claimant, an invitee. It was incumbent on the State and its employees to use such means to restrain and guard the inmates as would seem reasonably sufficient and necessary to a prudent person under like circumstances, in order to prevent them from doing harm to others. (*University of Louisville* v. *Hammock*, 127 Ky. 564; *Torrey* v. *Riverside Sanitarium*, 163 Wis. 71.) Those in charge of persons having dangerous propensities should so control their activities as to prevent them from rendering possible harm to third persons. (Restatement, Law of Torts, § 319.)

In such respects, the attendants assigned to this ward were negligent. Each had assumed that the other would have the patient under surveillance. This was a case of too much assumption. In permitting this inmate, known to have violent and assaultive tendencies, to freely roam through the long corridor, into the rotunda through an unlocked door, and then into the small visiting room in which there were unsuspecting visitors, the attendants were negligent. When the claimant entered the hospital to visit with his sister, he should have been afforded a place reasonably safe from contact with inmates, who it was known or should have been known were likely to cause bodily harm to those about them.

The contention of the Attorney-General, that the very nature of the institution should command a visitor to be more vigilant and alert and to be ever conscious of the possibility of unusual things happening, is untenable. The visitor had the right to assume that the hospital authorities had taken all reasonable precautions to prevent such an occurrence as took place herein. Claimant's conduct, when confronted with the intruder's unexpected appearance in the small visiting room, was that of a reasonably prudent person under like circumstances.

The accident having been caused through the negligence of the State and its employees, without any negligence on the part of the claimant contributing thereto, he is entitled to an award for the injuries sustained.