THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM CAPPARELLI and ALBERT BERNARDEZ, Respondents.

First Department, May 24, 1979

## APPEARANCES OF COUNSEL

*David H. Steiner* of counsel *(Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney),* for appellant.

*Jay Goldberg* for William Capparelli, respondent.

*Frank A. Lopez* for Albert Bernardez, respondent.

## OPINION OF THE COURT

Ross, J.

The defendants were charged with nine counts of criminal sale and criminal possession of controlled substances in vary-

ing degrees (Penal Law, §§ 220.03, 220.16, 220.21, 220.39, 220.43). They moved, pursuant to CPL 210.20 (subd [g]) to dismiss the indictment returned against them on the ground that they had been denied a speedy trial. After a hearing the trial court granted the application.

The question presented on this appeal is whether the underlying facts constitute "exceptional circumstances" under CPL 30.30 (subd 4, par [g]) permitting the prosecution to delay the arrest and trial of the defendants, following the filing and sealing of their indictment, for two and one-half months beyond the statutory period within which the prosecution must be ready for trial.

There appears to be substantial agreement as to the facts leading to the arrests. Beginning in early January, 1976, a unit of Manhattan South Narcotics Division, supervised by one Sgt. John Loughrman and utilizing a police informant, William Paradise, concluded three heroin transactions with the defendants. On January 12, 1976, Paradise received a sample of heroin from the defendants, as a prelude to the purchase of one-eighth kilo of heroin for $4,050. On April 19 and 20, 1976, the same informant made another purchase of one-eighth kilo of heroin from the defendants, for the sum of $10,000. On May 27, 1976, as a result of these transactions, the defendants were indicted for three counts of criminal sale of controlled substances, together with the attendant possession counts.

Sgt. Loughrman testified that at about the time the arrest of defendants was planned, in June, 1976, another person, one J. Gurowitz (also known as Jerry Green), was charged with the sale of one-eighth kilo of cocaine for $17,500. It appears from the record that Paradise had introduced Green to the undercover policeman to whom he had made the sale. The record further indicates that Green became a registered informant for the police department, enabling the police to investigate several additional figures in the narcotics trade.

In the interim, Paradise had also arranged a meeting with the defendant Capparelli to make a controlled purchase of an additional one-eighth kilo of heroin, and had also arranged for a meeting on June 9 with Green to purchase some mannite. The June 8 purchase from Capparelli was not completed, but the purchase of mannite from Green was concluded on June 9, and Green was arrested on a previously issued warrant. It was following his arrest that Green began co-operating with the

police and became a registered informant. During the month of February, 1977, these investigations were completed, and on February 10, 1977, defendants were arrested.

As a result of information obtained from Green, the police commenced a number of investigations involving narcotic traffickers other than these defendants. The first of these had as its objective the investigation of the distribution of mannite and quinine (used to dilute heroin) to various drug dealers in the metropolitan area. One Hyman Lieberman was the target of this investigation, and the record indicates that he was known to keep mannite and quinine in his store at 171 Avenue A. Green was working for Lieberman, delivering the dilutants to narcotics dealers. Further investigation indicated that Lieberman posssessed some 80 boxes of mannite in his store. As a result of additional information obtained from Green, the police were able to observe the delivery of 120 boxes of mannite and 5,700 ounces of quinine in late October to Lieberman's store. The supervising police officer testified that, in his opinion, an arrest of these defendants would identify the informant and link Paradise to Green, thus jeopardizing the entire investigation.

The defendants were aware, according to the police testimony, that Green and Paradise "acted together on occasion"; and that Hyman Lieberman had been seen in the company of defendants. Defendant Capparelli had told Paradise that he, Capparelli, was the supplier of Lieberman's quinine (the informant had introduced Green to these defendants in January, 1976, at which time Green sold some mannite to the defendants). (It was further testified that an arrest of these defendants at an earlier date would expose the informant, and render Green suspect and jeopardize the investigations in which Green was co-operating.)

In addition to the Lieberman investigation, Green had identified one Israel Pollack as the connection between Lieberman and the narcotics dealers to whom he was selling mannite and quinine. Pollack became a target of this investigation and on September 19, 1976, heroin was purchased from Pollack, using Green as the informant.

Two other investigations were commenced by the police using Green as the informant. These investigations had as the target one Anthony Mirra. The testimony indicates that one of the investigations involved extortion of Green by Mirra, flowing out of Mirra's allegation that the mannite, which

these defendants had purchased from Green, was supposed to go to Mirra. The second investigation involved the purchase of one ounce of heroin from Mirra by Green. That investigation continued for the purpose of identifying Mirra's source, until Janaury, 1977, when Mirra was believed to have discovered that Green was wearing a recording device.

During February, 1977, these investigations were closed and all the targets were arrested. When Lieberman was arrested the police seized 2,400 pounds of mannite in his store, worth approximately $500,000. Capparelli and Bernardez were arrested on February 10, 1977, on warrants which had been issued against them in May of 1976.

Subsequent to their arrest, the defendants moved to dismiss the indictment on the ground that more than six months had elapsed between their indictment and their arrest and, therefore, pursuant to CPL 30.30, they had been denied a speedy trial. A hearing was conducted before the Trial Justice and, as aforesaid, on April 24, 1978, said motion was granted.

The record before us clearly discloses that Paradise, Green, the defendants, and the subjects of the new investigations referred to above all knew each other. In fact, Lieberman was observed in the company of both of these defendants and there was a taped conversation in which defendant Capparelli had stated to the informant that he was the supplier of Lieberman's quinine.

It is the People's position that an early arrest of these defendants would have jeopardized the ongoing investigations of Lieberman, Pollack and Mirra and urge that there exist "exceptional circumstances" that would excuse the delay between May, 1976 and February, 1977 in prosecuting these defendants. Alternatively the People argue that the period between May, 1976 and November, 1976, when, as the defendants assert, cases were "made" against Lieberman, Pollack and Mirra, should be excluded, thus rendering the motion premature.

The Trial Justice properly noted that a "criminal action is commenced by the filing of an accusatory instrument against a defendant" (CPL 1.20, subd 17). Here the indictment was filed on May 27, 1976, and the six months ordinarily would be computed from that date, resulting in an expiration date of November 26, 1976. The question to be resolved by this court is whether the ongoing investigations of Lieberman, Pollack and Mirra, involving Green as a registered informant, were of

such significance and magnitude, as to trigger the "exceptional circumstances" exclusionary provisions of CPL 30.30 (subd 4, par [g]). CPL 30.30 (subd 1) provides in part:

"1. Except as otherwise provided in subdisivion three, a motion made pursuant to * * * paragraph (g) of subdivision one of section 210.20 must be granted where the people are not ready for trial within:

"(a) six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony".

Paragraph (g) of subdivision 4 requires that there be excluded from the computation the six months' time limitation under subdivisions 1 and 2: "(g) other periods of delay occasioned by *exceptional circumstances,* including but not limited to, the period of delay resulting from a continuous grant at the request of a district attorney if (i) the continuance is granted because of the unavailability of evidence material to the people's case, when the district attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period; or (ii) the continuance is granted to allow the district attorney additional time to prepare the people's case and additional time is justified by the *exceptional circumstances* of the case" (emphasis supplied).

Prior to the enactment of CPL 30.30, our courts followed the rule of *Barker v Wingo* (407 US 514), wherein five factors were identified in determining whether the speedy trial guaranteed by statute, and the State and Federal Constitutions, had been met. These factors were: 1. extent of the delay; 2. the reason for the delay; 3. the nature of the underlying charge; 4. whether or not there had been an extended period of pretrial incarceration; 5. whether or not there is any indication that the defense had been impaired by reason of the delay. (See, also, *People v Taranovich,* 37 NY2d 442; *People v Johnson,* 38 NY2d 271; *People v Imbesi,* 38 NY2d 629.) Prior to CPL 30.30 being adopted, we had a speedy trial rule in this State; subsequent to the adoption of CPL 30.30 same has become a ready rule. *(People v Henderson,* 72 Misc 2d 12, 15; *People v Saunders,* 84 Misc 2d 467, 470.)

In *People v Goodman* (41 NY2d 888, 889) the Court of Appeals indicated that "CPL 30.30 (subd 4, par [g]) allows exceptional circumstances to justify periods of delay not expressly covered by the statute, even in the absence of a formal

continuance." In *People v Taranovich* (37 NY2d 442, 444-445, *supra),* decided after the adoption of CPL 30.30, the Court of Appeals held that "there is no specific temporal duration after which a defendant automatically becomes entitled to release for denial of a speedy trial." The court further held (p 445): "Moreover, the various factors must be evaluated on an *ad hoc* basis since no rigid precepts may be formulated which apply to each and every instance in which it is averred that there has been a deprivation of the speedy trial right".

It is common knowledge that narcotics investigations, in order to reach high-level sellers, are time consuming and require a great deal of investigatory resources starting with frequently, low-level dealers, working their way slowly up the ladder to the high-echelon operator. It is here abundantly clear that the indictment and arrest were the result of a series of substantial and vigorously pursued investigations, commenced after the defendants were indicted, which continued until they were arrested.

The respondents rely upon *People v Washington* (43 NY2d 772), wherein it was held that a seven-month delay between defendant's felony indictment and his arrest constituted a denial of his statutory right to a speedy trial. However, in *People v Washington,* the Court of Appeals found that the proof of an ongoing narcotics investigation was deficient and there was no proof of significance shown for an ongoing investigation; rather it found a variety of unsatisfactory excuses. The court recognized that the "exceptional circumstances" provision of CPL 30.30 authorizes the exclusion of delay caused by an ongoing narcotics investigation, provided that "the prosecution's inability to proceed is justified by the purposes of the investigation and *credible, vigorous activity* in pursuing it" *(People v Washington, supra,* p 774; emphasis supplied).

Here, the evidence at the hearing established that the investigations did go forth vigorously, and credible testimony indicated that same were aimed at important members of the narcotics underworld in the metropolitan area. The targets of these investigations, the informants, and the defendants all knew each other and engaged in narcotics transactions with each other. The delay in arresting the defendants resulted from an unexpected occurrence (Green's agreement to serve as an informer) which took place after their indictment. There is no evidence that the delay was planned, or was for any

purpose other than to continue an ongoing investigation, and did not result in any tactical advantage being gained by the People.

The Second Circuit has recognized that the "exceptional circumstances" provision of a former Second Circuit rule regarding prompt disposition of criminal cases (very similar to CPL 30.30) authorized the exclusion of the delay resulting from an investigation of a subject other than the defendant. In *United States v Rollins* (487 F2d 409), the court held that the investigation of a police officer, who was to be a witness at the defendant's trial constituted an "exceptional circumstance" excuse in the delay of the prosecution of the defendant. In the *Rollins* case the court held delay occasioned by the secret investigation of the police furthered the public interest in full investigations of police corruption, and had the case been brought to trial while the investigation was in process, and had the defense cross-examined the witness concerning his alleged misconduct, the investigation would have been frustrated. The court concluded that in such a situation the balance would tip in favor of finding of "exceptional circumstances" to bring this case within the Federal rule *(United States v Rollins, supra)*.

CPL 30.30 was adopted to insure defendants of their right to a speedy trial and to prevent abuses which frequently accompany the denial of this right. There is no evidence presented here that the defendants suffered any of the abuses which are often attendant upon delay in prosecution. Any delay which occurred took place prior to arrest resulting in no "oppressive pretrial incarceration" during this delay. *(Barker v Wingo,* 407 US 514, 532, *supra.)* Here, the indictment was sealed, no one knew of its existence and therefore the indictment could not have caused the defendants any "anxiety and concern". Moreover, there is no indication the defense was impaired in any manner by this delay.

The defendants-respondents also rely on *People v Castro* (82 Misc 2d 358). That case is readily distinguishable. There, the motion to dismiss due to a seven-month delay was granted upon a finding that there was no justification therefor. In this case, however, we find that the investigations constituted "exceptional circumstances" and that the delay of two and one-half months beyond the statutory period, within which the People were required to be ready for trial, was justified.

Accordingly, the order of the Supreme Court, New York

County (ALEXANDER, J.), entered April 24, 1978, dismissing the indictment herein, should be reversed on the law, the motion to dismiss denied, the indictment reinstated and the case remanded for further proceedings.

FEIN, J. P., SULLIVAN, LANE and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered on or about April 24, 1978, reversed, on the law, the motion to dismiss denied, the indictment reinstated and the case remanded for further proceedings.