THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
SIXTO LOPEZ, Appellant.

First Department, November 13, 1980

APPEARANCES OF COUNSEL

*Shirley Werner* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Dora L. Irizarry* of counsel *(Timothy H. McGinn,* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J.

Sixto Lopez appeals from a judgment rendered May 4, 1979 convicting him upon his plea of guilty of criminal possession of a controlled substance in the third degree and sentencing him to an indeterminate term of four years to life. The issue is the denial of a speedy trial.

Lopez is alleged to have made two illegal sales of heroin on December 21 and 22, 1976, to undercover police then en-

gaged in a major narcotics crackdown operation. It is conceded that defendant was a relatively insignificant target in this 18-month "Operation Shadow". Four months later, in April 1977, defendant was indicted on two counts each of criminal sale and possession of a controlled substance in the first degree. Thirteen months later, in May 1978, he and 22 other suspects were arrested at the termination of the operation.

A hearing was held in August 1978, on defendant's motion to dismiss the indictment for denial of a speedy trial. The motion was denied on December 15, 1978. Two days earlier another Justice of the same court had granted a similar motion to dismiss the indictment against one Robert Watts, who was indicted at the same time as defendant and arrested in the same roundup as a result of the same police operation. There was no appeal from the dismissal of that indictment, which the People concede was based on quite similar facts and circumstances.

Relying upon the dismissal in *Watts*, defendant moved to reargue his dismissal motion. Upon denial of the motion, he entered a plea of guilty to one count of criminal possession of a controlled substance in the third degree in satisfaction of the entire indictment and was sentenced to an indeterminate term of four years to life. There should be a reversal.

The statute mandates a speedy trial (CPL 30.20). The factors to be considered in determining whether a defendant has been deprived of that right include the extent of the delay, reason for the delay, the nature of the underlying charge, the extent of pretrial confinement, and any prejudice to the defense by reason of such delay *(Barker v Wingo*, 407 US 514; *People v Taranovich*, 37 NY2d 442). The 13-month delay from indictment until arrest, and to a lesser extent the 4-month delay between criminal act and indictment, raise serious questions as to whether defendant was improperly denied that right.

CPL 30.30 (subd 1) requires the People to be ready to bring an alleged felon (other than in a homicide) to trial within six months after "commencement of a criminal action". Reasonable delays will be countenanced only in "exceptional circumstances" (CPL 30.30, subd 4, par [g]).

The People cite as the exceptional circumstance in this case the ongoing narcotics crackdown operation, and urge that earlier exposure of defendant to indictment and arrest would have compromised this major law enforcement effort for the reward of bringing to justice a relatively minor target of the operation. The expressed fear was that the indictment and arrest of Lopez might have revealed the identities of the informant and the undercover police officer. Indeed, such delays have received judicial sanction where the period between indictment and arrest was marked by "a series of substantial and vigorously pursued investigations, commenced after the defendants were indicted, which continued until they were arrested." *(People v Capparelli,* 68 AD2d 212, 217.) We further noted in *Capparelli (supra,* p 217) that the real targets of that series of investigations were "important members of the narcotics underworld in the metropolitan area." The close relationship among those targets, the defendants and the confidential police informants mandated a delay in exposing the operation through premature arrests even though the delay was not for the purpose of strengthening the case against the defendants. However, there is no showing here that Lopez had any such close relationship. The record is barren of any evidence that he knew or had any contacts with the other subjects of the investigation or any further dealings with the confidential informant.

In relying on the excuse of "exceptional circumstances", the burden remains on the People to show the applicability of the statutory exception. It "must be limited to instances in which the prosecution's inability to proceed is justified by the purposes of the investigation and credible, vigorous activity in pursuing it." *(People v Washington,* 43 NY2d 772, 774.) To relieve the People of this burden would be to deny a reasonable effect to the statutory exception. In *Washington* the continuing investigation was to build the case against the defendant. No such objective is shown here with respect to Lopez. As against him the case was made from the beginning. There is no showing of his continuing involvement in the operations of the targets.

The People concede that the facts in the *Watts* indictment were "very, very similar" to our case. What, then, were

the exceptional circumstances which differentiated the speedy trial claims of this appellant from those of Robert Watts?

We do not accept defendant's contention that reversal and dismissal are required on the theory of collateral estoppel because of the dismissal in Watts' case. In criminal cases collateral estoppel requires identity of parties and issues *(People v Berkowitz,* 50 NY2d 333; *Matter of Mc-Grath v Gold,* 36 NY2d 406; *People v Rasero,* 62 AD2d 845). There is no such identity here. However, it is noteworthy that each was a minor character in the same investigation, not integrally related to the major targets, and substantial delays occurred in bringing each to the eve of trial. The police conceded that although defendant might have known the informant, it did not appear that he knew any major target of the investigation who might, by reason of defendant's arrest, have been tipped off as to the police operation.

Some major targets of the investigation had been arrested well before defendant. If the intended purpose of those earlier arrests had been to turn those targets around for use in pursuing the investigation, it is not shown how an earlier arrest of defendant would have foiled that strategy or presented any obstacles to the ongoing investigation.

Two individuals, Arthur Campbell and Robert Rowe, neither of whom was identified as a "major narcotics violator", were arrested and "turned around" by the police. Campbell, Watts, defendant and a major violator identified only as Jane Doe (herself later "turned around" by the police) were indicted at the same time as defendant in April 1977. Campbell was taken into custody shortly thereafter, in June 1977, and Rowe was similarly taken into custody in February 1978. When asked why Campbell was arrested at an early stage and defendant was not, Lieutenant O'Boyle testified that this had been a "calculated risk", based on Campbell's potentially greater value to the police "as a confidential informant, if he were to cooperate, and his association with major known narcotic persons." O'Boyle conceded that he had no direct knowledge of any connection between defendant and Campbell.

What the police were mainly concerned about was whether the arrest of any suspect might ultimately compromise the confidential informant ("John Doe") who had originally introduced undercover police to the narcotics underworld contacts. Even if defendant had had no direct contact with the other suspects or targets, Lieutenant O'Boyle expressed concern about exposure through a "chain reaction" of events. This apprehension was expressed in the following testimony:

"Q: What was the connection that you made between the arrest or the decision not to arrest Sixto Lopez in February of 1978 and the work of Robert Rowe?

"A: When I took Robert Rowe into custody, he revealed to me the identity of the informant that introduced an undercover police officer to him. Another person I took into custody the same month, in February of 1977 also revealed to me the identity of the informant that introduced an undercover police officer to him. In addition to that, while I was briefing Robert Rowe, he gave me information that revealed to me that he was capable of introducing, possibly purchasing narcotics from a major narcotics violator. I knew this major narcotics violator. I knew this major narcotics violator.

"MR. KARSON: Can we refer to the major narcotics violator for purposes of this hearing as Jane Doe?

"THE COURT: All right.

"THE WITNESS: I knew Jane Doe was known to Arthur Campbell, and it was my belief at that time if we had arrested Mr. Lopez, it might very well cause a chain reaction whereby initially John Doe's identity would be revealed.

"THE COURT: How would it cause a chain reaction? What were the possibilities if you arrested this defendant?

"THE WITNESS: Based on the conversations I had had with the two subjects I arrested in February, your Honor, based on the fact that they revealed to me the two identities of the informants, it would appear then to me, or it did appear at that time to me that if I had arrested Mr. Lopez,

he *could know the identity of John Doe,* the informant who introduced an undercover police officer to him, and this causes a chain reaction which would reveal Campbell and reveal the new informant." (Emphasis supplied.)

A careful reading of O'Boyle's testimony reveals no indication of whether defendant knew either John Doe or Jane Doe, and no elucidation of O'Boyle's fear of a "chain reaction which might expose the police informants.

What plainly appears is that Campbell and Rowe, who were deeply involved in the narcotics business, were arrested relatively early on the basis that they would turn, even though their arrest would obviously reveal the informant. There is some evidence in the record that Campbell was not even "formally" arrested. Apparently he was turned upon threat of an arrest. On the other hand, Lopez, whose only involvement in the narcotics business, so far as appears from the record, was the two sales in December 1976, was not arrested until 17 months later, 13 months after he was indicted. He was left to "wither on the vine". The People "wouldn't get the same value if [they] had arrested Sixto Lopez at that time." His right to a speedy trial was ignored.

The People have thus failed to meet their burden of explaining adequately the delay well beyond the six-month statutory guideline between indictment and arrest. A 13-month delay is inordinate and per se prejudicial *(People v Ranellucci,* 43 NY2d 943, revg on dissenting opn of HERLIHY, J., 53 AD2d 384, 386-391). Failure to give a satisfactory justification even for what might otherwise be a tolerable period of delay renders that delay unreasonable *(People v Ranellucci,* 43 NY2d 943, also revg on dissenting opn of KANE, J., 53 AD2d 384, 385-386). This is especially true where, as here, defendant claims impairment of his defense, unavailability of a defense witness, by reason of the delay (see *People v Moore,* 47 NY2d 872, revg on dissenting opn of SANDLER, J., 63 AD2d 602, 603-606).

In the light of the foregoing, I deem it unnecessary to discuss the postarrest delay or the violation of defendant's due process rights, although I am persuaded that the delay amounted to a denial of due process.

The order, Supreme Court, Bronx County (GOLDFLUSS, J.), dated December 15, 1978, denying defendant's motion to dismiss the indictment for deprivation of a speedy trial, and the judgment, Supreme Court, Bronx County (DAVID LEVY, J.), rendered May 4, 1979, convicting defendant on his plea of guilty to criminal possession of a controlled substance in the third degree and sentencing him to an indeterminate prison term of four years to life, should be reversed on the law and the facts and the indictment dismissed.

SULLIVAN, LUPIANO and LYNCH, JJ., concur with FEIN, J.; KUPFERMAN, J. P., concurs in the result only.

Judgment, Supreme Court, Bronx County, rendered on May 4, 1979, and order of said court, entered on December 15, 1978, reversed on the law and the facts and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.