*401 OPINION OF THE COURT
Richard Lee Price, J.
This case is an unusual one and presents issues of first impression in this State. It is but the tip of the iceberg in AIDS-related litigation and raises the question of the clash between a defendant’s right to a speedy trial and his right to privacy of his medical condition.
The matter was sent to this court to resolve this very question because the delay caused by litigating the privacy issue extended beyond the speedy trial time limits. Defendant argues that the time spent protecting and enforcing his right to privacy should be charged to the People because it was they who forced him to assert that right by asking the court to compel him to undergo an AIDS blood test and then permit disclosure of the results. The People, on the other hand, argue that even though defendant had the right to press his objection, during the time that he was doing so they were stalled in progressing with the case. Although the defendant has the right to assert that his constitutionally guaranteed right to privacy was violated by the acts of the People, he cannot use that right as both a sword and a shield by claiming that the delay occasioned by litigating the privacy issue deprived him of his right to a speedy trial.
The analysis of this matter was more than a pro forma review of the various adjourned dates to determine which time was "excludable” under CPL 30.30 (4) (a). Consideration was given to the nature of the charges and the attendant circumstances, along with the constitutional ramifications regarding an intimate and personal question in an area where there is little precedent. This court is aware of the emotional state of both the defendant and the complainant, and appreciates the quality of the advocacy on both sides — both from the moving papers, the response and from the hearing which was conducted.
The total amount of time potentially chargeable to the People is 202 days. Although this is over the statutory six-month (181-day) limit, the People argue that the time should nevertheless be excluded pursuant to the exceptions set forth in CPL 30.30 (4) (a). This court also considered whether the defendant’s constitutional due process rights were violated under CPL 30.20.
For the following reasons, defendant’s motion to dismiss the indictment on due process and CPL 30.30 grounds is denied.
On February 8, 1989, the defendant was arrested and *402 charged with assault in the second degree (Penal Law § 120.05 [3]) among other charges. It is alleged that during the course of the defendant’s arrest, he hit the arresting officer in the face with a bottle, and then bit the officer on the hand, breaking the skin. The defendant told the officer that he had AIDS, and that the officer had one year to live. As Dante Aligheri stated so eloquently in the Inferno, "All hope abandon, ye who enter here!”[1]
The defendant was arraigned on the felony complaint and subsequently released pursuant to CPL 180.80.
On March 22, 1989, the People requested that the defendant submit to an AIDS test. The defendant refused, and on June 1, 1989, the People made a motion to compel the defendant to submit to the test. This motion was granted after oral argument on January 8, 1990. It should be noted however, that a major portion of the intervening seven months was excludable for various reasons, the most important being that the defendant decided to consent to the test and then later on, withdrew his consent.
Ultimately, the test was performed, and most of the time until September 28, 1990 was spent hearing and deciding a motion by the People to permit disclosure of the test results to them since the defendant objected to same. The disclosure order was granted on that date, and it was reported to the People that the defendant did, indeed, test positive for AIDS.
On October 23, 1990 the People moved for additional disclosure to the Grand Jury of the test results, pursuant to Public Health Law § 2785, for their consideration of a charge of attempted murder. This second disclosure motion was granted on January 31, 1991. After other various adjournments, the case was ultimately presented to the Grand Jury and the defendant was indicted for attempted murder in the first degree.
After calculating the includable and excludable time, this court determined that the total amount of time chargeable to the People is 202 days, which is, obviously beyond the six-months time permitted within which the People must be ready for trial.
LEGAL ANALYSIS
During oral argument the People raised certain questions of *403 law which has led to the second tier of analysis: that being, despite the fact that the defendant has shown that there has been a prima facie violation of CPL 30.30, in that over 181 days are chargeable to the People, is there nonetheless, additional time to be excluded under the "unavailable material evidence” provision of CPL 30.30 (4) (g) (i), or the "exceptional circumstance” provision of CPL 30.30 (4) (g) (ii)? Both arguments are closely related.
The People argued first, that they were not going to present the case to the Grand Jury until they ascertained whether the defendant had AIDS. They analogized the situation to a "gun case” without the ballistics report showing the operability of the gun. This argument was an integral part of their second argument, which was that this evidence (that the defendant tested positive for AIDS) was material to the People’s case and was unavailable first through the defendant’s refusal, and then by operation of statute, until such time as the court issued the disclosure orders. The People argued that they exercised due diligence to get this evidence as required by CPL 30.30 (4) (g) (i).
The People’s third argument was that because of the defendant’s refusal, consent, and subsequent refusal to the test and subsequent refusal to agree to release the results, this case was one which involved an "exceptional circumstance” under CPL 30.30 (4) (g) (ii).
This court has considered the People’s three arguments, and finds them persuasive. This court has also considered the legal ramifications of a lengthy preindictment delay, and whether a 26-month delay on its face alone, violates defendant’s constitutional right to a speedy trial and therefore warrants dismissal of the indictment pursuant to CPL 30.20.
This court agrees with the People’s first argument that they could not present the case to the Grand Jury until they received the results of the defendant’s AIDS test. First, it is axiomatic that the District Attorney has broad discretion in presenting matters to the Grand Jury (CPL 190.55; see, e.g., Johnson v Town of Colonie, 102 AD2d 925 [3d Dept 1984]; People v Rockwell, 97 AD2d 853 [3d Dept 1983]; see also, Matter of Holtzman v Goldman, 71 NY2d 564 [1988]; People v Di Falco, 44 NY2d 482 [1978]). The District Attorney has the discretion to reduce, add or amend charges. (People v Bowman, 88 Misc 2d 50 [Crim Ct 1976].) It has been held that the courts "have no control over the discretion exercised by the prose *404 cutor and they have no authority to mandate a District Attorney to perform or not to perform his discretionary functions.” (People v Ruggieri, 100 Misc 2d 585, 588 [Poughkeepsie City Ct 1979].)
In the case at bar, there has been a lengthy preindictment delay because of the position the defendant took with regard to the AIDS test and its results. Case law has held that lengthy preindictment delays can be justified by an investigation conducted in good faith. Was the delay here the result of a good faith "investigation” into the defendant’s status vis-ávis the AIDS virus? This court finds in the affirmative.
It is this court’s opinion that material evidence (the results of the defendant’s AIDS test), necessary to the People’s case, was not available to the People for the period from June 1, 1989 until January 31, 1991, while the various motions were pending. It was not until the positive test results were permitted to be disclosed to a Grand Jury that the case could, indeed, be presented. In order for the People to seek an indictment for attempted murder in the first degree, they must set forth evidence before the Grand Jury showing that the defendant attempted to intentionally cause the death of the officer. Without ruling on whether it is possible to transmit AIDS via a human bite, judicial notice is taken of the fact that there is presently no cure for AIDS and, as such, it is fatal. The Bible says, "[T]he land of darkness and the shadow of death”.[2] It is clear that without the information that the defendant had AIDS, the People’s case would lack the material[3] element of defendant’s capability of causing death. Without this evidence, the People’s case would merely be one of a human bite, possibly a misdemeanor assault, which would most likely not be presented to the Grand Jury.
The fact remains that the only way the People could get this information was from the defendant himself, whether voluntarily or involuntarily.[4] Therefore, this court finds that *405 the People were entitled to pursue their investigation for this information. As it was the defendant who "controlled” the situation, I find that the People acted in good faith and were justified in pursuing the legal means in order to obtain the needed information.
Defendant’s argument that the People should have immediately proceeded into the Grand Jury without the test results and obtain an indictment for assault is without merit. United States v Lovasco (431 US 783, 791 [1977], reh denied 434 US 881 [1977]) holds "that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect’s guilt beyond a reasonable doubt. To impose such a duty would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.’ ” (Emphasis added.)
The court goes on to state that "no one’s interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so” (United States v Lovasco, 431 US 783, 792, supra). By proceeding too quickly, the court held that the prosecutor’s ability to continue an ongoing investigation would be impaired. (See also, United States v Watson, 423 US 411, 431 [1976], reh denied 424 US 979 [1976] ["(g)ood police practice often requires postponing an arrest * * * in order to * * * develop further evidence necessary to prove guilt to a jury”].) The court in Lovasco noted that the prosecutor is not obligated to present all charges, and may decline to prosecute certain cases for a good reason. (See also, ABA Project on Standards for Crim Just, Prosecution Function § 3.9 [b] [App Draft 1971].) The Lovasco court (at 795) found that there was a fundamental difference between investigative delay and a delay undertaken by the prosecutor " 'to gain tactical advantage over the accused’ ” (see also, United States v Marion, 404 US 307, 324 [1971]).
Here the People did not delay obtaining an indictment for "tactical advantage.” Instead, the time was spent gathering the necessary evidence to properly evaluate the charges to be made. Of the 26 months between arrest and indictment, 19 months were spent litigating the issues that finally led to the People acquiring the evidence necessary to any Grand Jury presentation. Under the circumstances, the delay occurred because of the good faith efforts of the prosecution to gather this evidence. Defendant would have this court believe that a 26-month preindictment delay, without regard to the reasons *406 for it, mandates dismissal of the indictment. This position does not reflect the state of the law on this topic inasmuch as no time frame has been set beyond which further delay requires dismissal.
Case law has long held that an unreasonable preindictment delay in proceeding with a prosecution of a defendant constitutes a denial of due process (see, e.g., People v Singer, 44 NY2d 241 [1978]; People v Staley, 41 NY2d 789 [1977]; see also, NY Const, art I, § 6).
The question is whether the delay was unreasonable when balanced against several factors set forth in People v Taranovich (37 NY2d 442 [1975]; People v Bonsauger, 91 AD2d 1001 [2d Dept 1983]; People v Bryant, 65 AD2d 333 [2d Dept 1978], appeal dismissed 46 NY2d 1037 [1979]). These factors are the 1) length of the delay; 2) reason for the delay; 3) degree of actual prejudice to the defendant; 4) seriousness of the underlying offense, and 5) whether the defendant has been incarcerated.
The courts have repeatedly and consistently refused to dismiss indictments where there were arguably excessive delays as long as the reason for the delay was legitimate. A 24-month preindictment delay did not warrant dismissal of a bribery indictment where, during those months, the People were investigating similar acts by defendant’s fellow Department of Consumer Affairs’ inspectors. (People v Bonsauger, supra.) A 22-month preindictment delay was excused by the prosecution’s investigation of the eyewitness’ account of the crime. (People v Quince, 119 AD2d 981 [4th Dept 1986], lv denied 68 NY2d 671 [1986]; to the same effect, see, People v Frazier, 159 AD2d 1017 [4th Dept 1990], lv denied 76 NY2d 734 [1990], cert denied 498 US 873 [1990] [an 11-year delay due to the People’s efforts to corroborate an accomplice’s statement was excused]; People v Angrisani, 160 AD2d 713 [2d Dept 1990], lv denied 76 NY2d 730 [1990] [a 12-month delay was excused where it was shown that there was an ongoing investigation]; People v Rosado, 166 AD2d 544 [2d Dept 1990], lv denied 77 NY2d 843 [1991] [an 18-month preindictment delay was the result of the prosecution’s good faith investigation].)
Given the fact that the delay in this case was entirely excusable, the indictment must stand unless the defendant’s actual prejudice is a stronger factor. The lack of actual prejudice, however, in the light of a justifiable excuse for the *407 delay, militates against dismissal of the indictment. (People v Romero, 173 AD2d 654 [2d Dept 1991], lv denied 78 NY2d 1014 [1991] [upheld an indictment delivered after a 38-month delay where there was no allegation of prejudice]; People v Collins, 154 AD2d 901 [4th Dept 1989], lv denied 75 NY2d 769 [1989] [a 6½-year delay was excused because the defendant failed to demonstrate prejudice]; People v Corrigan, 139 AD2d 918 [4th Dept 1988], lv denied 72 NY2d 917 [1988] [a 15-month delay]; People v Gayle, 167 AD2d 927 [4th Dept 1990], lv denied 77 NY2d 838 [1991] [a 9½-month delay].)
The defendant alleges that his "dulled” memory constitutes actual prejudice even though he did not specify how a fresher, sharper memory would provide a defense that will be unavailable or compromised if the prosecution is allowed to proceed at this time. A similar claim of prejudice was squarely rejected by a court of another jurisdiction which persuasively upheld the indictment, relying in part on Lovasco (supra). In Howell v State (418 So 2d 1164 [Fla App, 1st Dist 1982]), there was a delay of 16 months between the crime and arrest. The court (relying on Lovasco, supra) held (at 1170) that there was no due process violation as "the appellant’s claims of prejudice recounted the faded memories of his friends, as well as his own memory. It is unclear whether these memories faded due to the passage of four months from the time that the crime occurred until the filing of the information, or faded due to the passage of the far longer post-information period * * * [f]urther, it is unclear in what material way these faded memories caused the appellant actual prejudice. Speculative allegations as to faded memories simply do not suffice to prove actual prejudice.” (Italics supplied.) The court continued (at 1174), " '[although faded memory may result in prejudice * * * that in order to prejudice the defense to the extent necessary to constitute a speedy trial violation, the faded memory must substantially relate to a material fact in issue * * * Vague assertions of faded memory will not suffice.’ ” A claim of prejudice caused by a "dulled” memory is insufficient to outweigh the legitimate excuse for delay presented by the People.
Concerning the People’s first two arguments, I find as a matter of law that the People had a good faith basis to conduct an investigation into the issue of whether the defendant had AIDS. Not only was this information unavailable to the People, and also necessary and material if the People wanted to seek an indictment for attempted murder in the *408 first degree, but also there was the very human and compelling fact that the complainant, the officer in this case, was the person who was the most concerned and interested in finding out if indeed it was true.[5]
I also find as matter of law that this case falls within the category of "exceptional circumstances” under CPL 30.30 (4) (g) (ii) because of the extraordinary circumstances surrounding this case, despite the fact that the People have exceeded the statutory time limit for speedy trial.
In People v Regan (110 Misc 2d 12 [Sup Ct 1981]) the codefendant wished to testify before the Grand Jury, but was unable to appear as scheduled until six months and seven days after the defendant was arrested. The court found that the delay was neither caused by the People nor by the defendant, and held that the delay was an exceptional circumstance, and that the defendant was not prejudiced by the delay. (See also, People v Kahn, 172 AD2d 231 [1st Dept 1991]; People v Fluellen, 160 AD2d 219 [1st Dept 1990].)
It has been held that exceptional circumstances "must be limited to instances in which the prosecution’s inability to proceed is justified by the purposes of the investigation and credible, vigorous activity in pursuing it.” (See, People v Washington, 43 NY2d 772, 774 [1977].)[6]
*409 The People argue that this case is analogous to People v Etheridge (116 Misc 2d 98 [Sup Ct 1982]), wherein the defendant was charged with criminal possession of stolen property, forgery, and criminal possession of a forged instrument. The defendant refused to give handwriting exemplars to the People after being ordered to do so by the court. Ultimately the defendant was found to be in contempt of court, and was sentenced on that contempt charge. Two and one-half years passed and the People had not presented the forgery case to the Grand Jury because of the lack of an exemplar needed to prosecute the defendant on the forgery and other charges. The defendant moved to dismiss under CPL 30.30. The court denied the motion, holding that the evidence was "material” to the People’s case and that: "The period of delay here was a reasonable one resulting from pretrial proceedings concerning the defendant. The delay was also occasioned by an exceptional circumstance. Certain evidence — handwriting exemplars — was unavailable and material to the People’s case. The prosecutor’s inability to proceed was justified.” (People v Etheridge, supra, at 100-101.) The court continued, stating that it was the defendant who prevented the People from obtaining the evidence while he insisted that they meet their speedy trial burden: "He prevents the People from obtaining necessary evidence which they are authorized by law to obtain. The District Attorney is forced to engage in extensive pretrial litigation which has resulted in delay.” (People v Etheridge, supra, at 101.) The court concluded (at 101-102) that "[a]ny prejudice which the defendant suffers was a risk he deliberately assumed by his conduct. He may not profit from his * * * conduct.”
Such is the case here. The People were entitled to this material evidence, and although the defendant was within his rights to assert his right to privacy, he did so while assuming the risk of a dulled memory due to the passage of time spent litigating the extent of that right. As stated above, he cannot *410 use his conduct as both a sword and a shield — to claim a wrong yet profit from it.
For all the reasons set forth, defendant’s motion is denied in all respects.

. Canto III, line 9.

. Job 10:21

. Richardson, Evidence § 4 (Prince 10th ed) defines material evidence as evidence of a fact in issue or evidence' probative of a fact in issue. The fact in issue before the Grand Jury was whether there was prima facie evidence to believe that the defendant intended to cause the death of the officer, and whether the defendant attempted to do so.

. Defendant’s argument that the People could have taken blood from the officer to test for AIDS is misplaced. The issue is not whether the officer has AIDS, but whether the defendant did at the time he assaulted the officer.

. There have been three recent cases where the courts have addressed "AIDS phobia” and the plaintiff's possible recovery of money damages. (See, Castro v New York Life Ins. Co., 153 Misc 2d 1 [NY County, Davis, J.]; Doe v Doe, 136 Misc 2d 1015 [Sup Ct 1987]; Hare v State of New York, 143 Misc 2d 281 [Ct Cl 1989], affd 173 AD2d 523 [2d Dept 1991], lv denied 78 NY2d 859 [1991]; see also, Lipsig, Tort Trends: AIDS Phobia and Negligent Infliction of Emotional Distress, NYLJ, Mar. 26, 1992, at 3, col 1.) It is possible that the police officer would have such a claim, if he were to prove that the condition suffered was a direct result of the defendant’s breach and that that breach was the proximate cause of the ensuing injuries. Since his claim would be tied to a distinct event that would cause a reasonable person to develop a fear of contracting AIDS, there would be a guarantee that the court would find the claim genuine. (See, Lipsig, op. cit., at 4, col 4, discussing the court’s decision in Castro, supra.)

. It should be noted however, that in Washington (supra), the court held that there was no satisfactory proof of an ongoing investigation, and dismissed the indictment. See also, People v Luis-Figueroa (178 AD2d 1008 [4th Dept 1991]), where over six months had elapsed since the defendant was indicted, and he had not yet been arrested. The People stated they were waiting until they arrested the codefendant, and they were conducting an investigation. The court affirmed the dismissal of the indictment, stating that there was no proof of an ongoing narcotics investigation. In People v Lopez (77 AD2d 287 [1st Dept 1980]), there was a 13-month delay between the indictment and the defendant’s arrest. The court dismissed the indict *409 ment holding that although a narcotics investigation existed, the defendant was not the real target. Similarly in People v Stanton (71 AD2d 932 [2d Dept 1979]) there was a 23-month delay between the defendant’s arrest and trial. The People claimed that they needed a necessary witness (who was incarcerated) to testify before the Grand Jury, and there was a delay finding and producing him. The court held that the case could have been presented with other witnesses and the investigative delay to find the witness did not fall within the "exceptional circumstances” provision of CPL 30.30 (4) (g). (See also, People v Capparelli, 68 AD2d 212 [1st Dept 1979].)