■ ROBERT NADAL et al., Appellants, v STATE OF NEW YORK, Respondent.

On October 29, 1982, four inmates from the Otisville prison facility were assigned to work under the supervision of a corrections officer in a park near a residential community. Claimants allege that the officer allowed two inmates, a convicted burglar and a convicted robber, to wander off. The prisoners took the opportunity to break into claimants' home, where they stole jewelry and other property. The claimants were not at home at the time and, as the property was subsequently recovered, no claim is made for either property damage or direct physical injury. Claimants seek to recover solely for psychological damage "by reason of the violation of [their] privacy and of the privacy of [their] home such that [they have] an uncontrollable fear of being in [their] home alone" or "of returning to [their] home when the home is empty".

It is not necessary to pass upon claimants' contention that the State owed a duty to nearby community residents to protect against foreseeable crimes committed by inmates who were either negligently or intentionally permitted to wander off at liberty, in view of the fact that the claimed consequential emotional injuries are not compensable under New York law (*Kennedy v McKesson Co.*, 58 NY2d 500; *Tobin v Grossman*, 24 NY2d 609). While the invasion of the sanctity of claimants' home was understandably emotionally shocking, such injuries are compensable only when they are a direct, rather than a consequential, result of the breach of a duty (*Kennedy v McKesson Co., supra*). Bracken, Rubin and Lawrence, JJ., concur.

Titone, J. P., concurs in the result, with the following memorandum: Though I agree with the majority that there must be an affirmance, I reach that result by a different route. In my view the State breached no duty to the claimants.

*Williams v State of New York* (308 NY 548) is the leading case on point. In that case, the Court of Appeals found that the finding of negligence on the part of the State in guarding and apprehending a prisoner who had escaped from a State prison farm and the responsibility of the prisoner for the death of the claimant's testator was supported by the evidence. Nonetheless, the claim was dismissed because the duty breached was only the "*public* duty *to punish*, a duty owed to the members of the

community collectively" (*Williams v State of New York, supra,* p 556). There was no "duty to members of the public to protect them from the risk of exposure" (*Williams v State of New York, supra,* p 556). In addition, the court held that there was not a sufficient relationship between the State's negligence in permitting the escape and the prisoner's conduct while at large to satisfy the requirement of proximate cause (*Williams v State of New York, supra,* p 554).

The *Williams* case rests upon sound public policy. "To hold otherwise would impose a heavy responsibility upon the State, or dissuade the wardens and principal keepers of our prison system from continued experimentation with 'minimum security' work details — which provide a means for encouraging better-risk prisoners to exercise their senses of responsibility and honor and so prepare themselves for their eventual return to society" (*Williams v State of New York, supra,* p 557). The requirement of a showing of a special duty is followed elsewhere (*see,* Liability of Public Officer or Body for Harm Done By Prisoner Permitted to Escape, 44 ALR3d 899) and is eminently sound (*see, Weiner v Metropolitan Transp. Auth.,* 55 NY2d 175).

No special duty has been shown here. "Without duty, there can be no breach of duty, and without breach of duty there can be no liability" (*Williams v State of New York, supra,* p 557). The question of damages, therefore, need not be reached.