OPINION OF THE COURT
Adolph C. Orlando, J.
Claimant, Raymond Hare, seeks damages for pain and *282 suffering, alleging that the failure of defendant to properly guard, restrain or control an inmate in its custody caused the injuries complained of.
On March 17, 1985, one Christopher Pleasants, also known as Donald Pleasance, an inmate at Arthur Kill Correctional Facility attempted to take his life by cutting his throat with a piece of broken glass. He was immediately taken to Richmond Hospital where he was treated and the wound sutured. He was retained at Richmond, in the custody of two correction officers from the Arthur Kill Correctional Facility, for further treatment.
On March 18, 1985, at or about 3:00 p.m., Officers Giallombardo and LeBrocq reported to the hospital to relieve two other officers who were guarding the inmate. Pleasants was still in the intensive care unit (hereinafter ICU). At the time the relief guards arrived, Pleasants was resting in bed attached to an intravenous unit. He was not wearing handcuffs, shackled or otherwise restrained.
Both officers took a position directly outside the ICU in the rear of the nurses’ station, approximately 45 feet from the inmate. They allege to have maintained visual contact at all times through a door opening.
At approximately 5:04 p.m., while Officer LeBrocq was away from his station, the inmate, Pleasants, sat up in bed, looked around the ICU and for some unexplained reason leaped to the floor. He reached over to a patient who was eating, grabbed a fork and plunged it into his own throat. Upon observing this unusual behavior, Officer Giallombardo charged into the room, grabbed the inmate holding the fork and spun him around. Both fell backward onto the floor with the inmate directly on top of Giallombardo. Unable to subdue him alone, Officer Giallombardo called for help.
The claimant and one Kligman were in the ICU in the process of performing portable X rays on the patients. Claimant, Kligman along with a Nurse Bergen quickly responded to assist the officer.
Hare attempted to remove the fork from Pleasants’ hand as he and the officers were grappling with the inmate. Suddenly, he screamed, apparently in excruciating pain. Pleasants had bitten Hare on the right forearm, one third down from the right antecubital fossa. Shortly after the bite, Hare with the security staff and Officer LeBrocq were able to restrain the inmate. He was handcuffed, sedated and then transported *283 back to the Arthur Kill facility where he was placed in the isolation room in full bed restraints. Pleasants received a minor puncture wound from the fork.
Approximately four or five minutes prior to the occurrence, Officer LeBrocq had left his station to call the correctional facility on an accountability check and thereafter, to go to the men’s room. He testified that at approximately 5:05 p.m., he heard over the public address system that an officer needed assistance, and arrived at the scene at approximately 5:09 p.m. Apparently, he had also gone to the cafeteria, since his trial testimony also indicated that at the time the call for assistance was announced on the paging system, he was purchasing a meal in the cafeteria and intended to return to his station. Upon hearing of the emergency he ran down the hall, up a flight of stairs and through a corridor to the ICU. He opined that it took 45 seconds from the time he heard the call to arrival at the scene.
However, John Kiernan, a hospital employee, testified to a different version of the events. He testified that the officer was paged three times before he responded and that at the time of the incident LeBrocq was in the process of eating his meal in the cafeteria.
After the incident, the claimant sought treatment. It was then Nurse Bergen indicated that the wound should be cleaned immediately since "that man may have 'AIDS’ ” (acquired immunodeficiency syndrome).
Claimant was taken to the emergency room where the wound was cleansed and treated and he was released. He returned to work. Sometime later, upon reflecting on what had happened, he became very upset at the serious consequences which might result if the inmate did indeed have AIDS. Accordingly, he sought private medical attention from the family physician. He complained to him about the fear of AIDS and at his insistence a test to determine the presence of the disease was ordered. The test proved negative. Two additional tests thereafter also proved negative.
Claimant testified that his fear of contacting AIDS was so oppressive he sought psychiatric counseling. Dr. Chartock, from whom he sought counseling, prescribed tranquilizers to relieve the anxiety. To date, he feels very depressed and has lost some 30 pounds. Additionally, his relationship with his family is somewhat withdrawn due, he alleges, to the constant fear of acquiring the dreaded disease.
*284 Although the injury to his right forearm has healed, he still has residual pain and a permanent minor scar.
It is the claimant’s contention that the failure to handcuff, shackle or in any way restrain the inmate, Pleasants, was a clear departure from the standards required. Claimant further contends that the officers assigned to guard the inmate violated their own rules which required that they be posted in the room and not to leave their post until properly relieved. As a result of such failure, the claimant was caused both physical and psychic (AIDS-phobia) damages and, accordingly, must be compensated.
The State counters that the procedures for handling prisoners in a hospital were fully and properly implemented by the guards. The inmate should not have been mechanically restrained unless a specific need to do so was clearly indicated.
Additionally, the mere possibility of contracting AIDS is not compensable. It is too speculative and the State may not be cast in damages solely on a claim for emotional distress.
To recover, claimant must establish the existence of a duty to the claimant, that the duty was breached, and that the breach was the proximate cause of the ensuing injuries. Without a direct link between the duty and the resulting injuries an award must be denied (Lando v State of New York, 47 AD2d 972, mod 39 NY2d 803; Soto v State of New York, 39 AD2d 993).
Clearly, there is no doubt that the defendant and its employees knew that the inmate, Pleasants, had attempted to commit suicide and had previously attempted to end his life by cutting his throat (Thall v State of New York, 42 AD2d 622). A fortiori then, the officers at the hospital were charged with knowledge of the inmate’s mental disturbances (Murray v St. Mary’s Hosp., 280 App Div 803), and could reasonably have anticipated that he would try to do harm to himself again (Weihs v State of New York, 267 App Div 233).
Whether or not the inmate should have been more closely supervised or otherwise mechanically restrained are issues which must be determined from the facts and circumstances as adduced from the evidence at trial (cf., Casella v State of New York, 121 AD2d 495; Scolavino v State of New York, 297 NY 460).
At the time of the occurrence, the evidence reveals and the court finds that one officer was away from his post in the cafeteria, and the other officer approximately 45 feet away *285 and outside the room. The inmate was not restrained in any way. It should have been apparent and reasonably foreseeable that one officer approximately 45 feet away from the patient could not prevent a sudden and impulsive act. Accordingly, the better and more persuasive method would have been to have this inmate in some restraint (Joachim v State of New York, 180 Misc 963). The record indicates that after the occurrence the inmate was indeed placed in bed with restraints.
The officers should have been in the same room and at close proximity to the inmate. Accordingly, the court finds that the failure to be there was negligence which contributed to the injuries herein (Bradshaw v State of New York, 24 AD2d 930).
Negligence alone, without more, does not entitle the claimant to recover. In the circumstances then prevailing, assistance was summoned and required. Claimant, in the course of his duties, was in the same room; in close proximity to the incident and observed the occurrence as it developed due to the defendant’s negligence. He responded as any other person would do. He reacted to the emergency that confronted him, and in an attempt to rescue the person who had placed himself in a perilous situation, he sustained physical injuries which are compensable (cf., Provenzo v Martenson, 23 NY2d 256).
In addition to the physical injuries, claimant seeks a recovery for the mental anguish, the emotional distress and AIDS-phobia directly caused by the negligence of the defendant. Where the mental anguish and depression are a direct result of the defendant’s breach of duty, a recovery may be had (Martinez v Long Is. Jewish Hillside Med. Center, 70 NY2d 697). However, claimant must prove that the breach was the proximate cause of all the injuries (Martinez v Long Is. Jewish Hillside Med. Center, supra). If the psychological injuries are only a consequence of the defendant’s negligence, then in that event, those injuries are not compensable (Nadal v State of New York, 110 AD2d 890).
The defendant argues that public policy forecloses a recovery against the State of New York for infliction of emotional distress (cf., Wheeler v State of New York, 104 AD2d 496; De Lesline v State of New York, 91 AD2d 785, lv denied 58 NY2d 610). In the proper circumstances, however, negligent infliction of emotional damages may be recoverable (cf., Kennedy v McKesson Co., 58 NY2d 500).
*286 The claimant relies on Ferrara v Galluchio* for the proposition that such injuries may be compensable. However, the circumstances here are clearly not similar and do not persuade this court in awarding damages for such emotional distress.
The evidence does not reveal that the inmate was suffering from AIDS. The record does indicate that Nurse Bergen believed that he might be suffering from the disease and took immediate precautions to prevent possible infection of the claimant. Whether the inmate had AIDS was a rumor at best.
Since the happening of this assault on the claimant, he has been tested for the AIDS virus three times. All these tests resulted in negative findings.
To award damages simply on the basis of risk, perceived solely on an unsubstantiated statement by Nurse Bergen, and a resulting fear or threat of developing the disease in the future is not the law of this jurisdiction (Askey v Occidental Chem. Corp., 102 AD2d 130). The evidence is simply too speculative and remote to award damages on that basis. Although the court is aware that claimant may have lingering fears from the ordeal, it cannot, based on the evidence before it, award damages for AIDS-phobia, since every test has proven the claimant’s fear to be unfounded. It is also important to note that the court has no evidence before it to indicate that the assailant suffered from AIDS.
The physical injury that claimant sustained was both painful and somewhat restrictive. There is a permanent scar at the injury site.
Claimant has sustained medical expenses and the loss of earnings as a direct consequence of the injuries sustained.
The court has considered all the damages sustained and on the basis of all the evidence adduced at trial awards the sum of $35,000 for the conscious pain and suffering, together with any permanency thereto and the medical expenses and the loss of earnings sustained, if any.
All other motions not heretofore disposed of are hereby denied.

 5 NY2d 16, rearg denied 5 NY2d 793.