OPINION OF THE COURT
Kristin Booth Glen, J.
Petitioner commenced this proceeding pursuant to section 33.14 of the Mental Hygiene Law for a judgment permanently sealing her psychiatric records. This case provides the first opportunity for judicial interpretation of the statute which was enacted to remove the stigma of past psychiatric hospitalization from persons who have recovered from mental illness.
FACTS
During the period between 1963 and 1982, petitioner received psychiatric institutional care on nine separate occasions. For two months during 1963, while at college in Rhode Island, petitioner received psychiatric institutional care from respondent Butler Hospital. Beginning in 1974, she was subject to eight voluntary psychiatric in-patient admissions of short duration at hospitals owned or operated by respondent New York City Health & Hospitals Corp. (HHC). Her last psychiatric admission was in 1982 and she has received no psychiatric care since that time. She has, however, been affected by what she describes as "psychiatric stigmatization” in several areas of her life — employment,[2] legal relationships (including the ability to seek otherwise available government benefits), social milieu and her own self-evaluation and aspirations.
Petitioner now seeks an order pursuant to section 33.14 of the Mental Hygiene Law permanently sealing the records of these nine psychiatric in-patient admissions.[3] Neither respondent contests the allegations of the petition nor opposes the relief sought. HHC, however, does request clarification of several issues. Specifically, HHC asks the court to address whether HHC is to respond to a request for records consis *556 tently with section 33.14 (a) (2) in the following instances:[4] (a) a request from a psychiatric hospital in which the petitioner may be subsequently hospitalized; or (b) a request under paragraphs 1 through 11 of section 33.13 (c)[5] of the Mental Hygiene Law.
THE LEGISLATIVE HISTORY AND PURPOSE OF SECTION 33.14
Prior to the enactment of section 33.14, the court lacked authority to seal psychiatric records, even if the records resulted from an illegal confinement. The only provision allowing for the sealing of records at that time was found in section 15.31 (f) of the Mental Hygiene Law.[6] This provision only protected patients from undue publication of the certification and commitment by sealing court records of the involuntary admission, but provided no protection from release of hospital records by other means.
Section 33.13 of the Mental Hygiene Law also provided for some confidentiality of psychiatric records. This provision, particularly subdivision (c) (8), however, still allowed considerable access by government agencies and insurance companies to an individual’s hospital records. Not only could these records be disclosed without the patient’s knowledge or consent, but once released, there were no barriers to their being further disseminated.
In this context, the Court of Appeals decided two cases concerning psychiatric records, Palmer v New York State Dept. of Mental Hygiene (44 NY2d 958 [1978]) and Wade v Department of Mental Hygiene (49 NY2d 947 [1980]). In Palmer, the court upheld the denial of an application to vacate certification of mental illness and to expunge records relating to that certification, stating "expungement of records generally is a matter of legislative concern, and no statute provides for the *557 expungement sought”. (Palmer v New York State Dept. of Mental Hygiene, 44 NY2d, supra, at 960.) In Wade, the court denied the petitioner’s application to expunge psychiatric records pertaining to an involuntary commitment obtained under a falsified certificate, citing Palmer as its authority for holding that it lacked authority to order expungement.
In response to these decisions, Assembly Bill A 4110-A (1980) for section 33.14 was introduced to remedy the consequences of illegal confinement.[7] Supporters of the bill argued that once mental health records existed, there was no way to insure their confidentiality.[8] Although the sealing or expungement of records could never undo the wrong done by the illegal detention, it could help to assure that no one would be seriously stigmatized or suffer life-long discrimination as a result.[9]
As the bill moved through the Assembly and Senate, two significant changes occurred.[10] First, the bill went beyond its original purpose in preventing stigmatization and discrimination to those illegally confined and expanded its protections to individuals regardless of the legality of their hospitalizations. Second, the bill originally provided for "expungement” of the psychiatric records. However, the Legislature chose to adopt a provision for "sealing” instead of destroying the records; once sealed, those holding the records and the former mental patient were to treat the sealed records as if they did not exist. This balanced approach eliminated the stigma and discrimination, while preserving the value of the medical history for future use, should the need arise.
REQUIREMENTS OF THE STATUTE AS APPLIED TO PETITIONER
Since she is not claiming illegal confinement, petitioner’s *558 allegations and proof must satisfy the three requirements of section 33.14 (a) (1) (b) to permanently seal her records.[11]
First, petitioner must demonstrate by competent medical evidence that she is not currently suffering from a mental illness.[12] Petitioner has satisfied this requirement by submission of an affirmation by a licensed physician specializing in psychiatry, stating that in his opinion, to a reasonable degree of medical certainty, petitioner is not suffering from a mental illness.
Second, petitioner must demonstrate that she has not received in-patient services for the treatment of a mental illness for a period of three years. This element is satisfied by the submission of an affirmation by her personal physician, who has treated her at regular monthly intervals for the last six years. The doctor states that there has been no psychiatric admission or any other psychiatric treatment during this period.
Third, petitioner must demonstrate that both her interests and those of society would be best served by sealing her records. Clearly, as shown by the legislative purpose, society’s interest is to prevent stigma and discrimination. Further, as urged by petitioner, society would also benefit by removing barriers to an individual’s opportunity and ability because that person would then be able to participate more fully in and contribute to society.
Petitioner’s affidavit also demonstrates that sealing her psychiatric records would best serve her own interests. Petitioner now plans to pursue a professional career which will entail the filling out of forms, interviewing, and answering questions, some of which may inquire about psychiatric hospitalization. Since an order sealing her records pursuant to section 33.14 would permit her to answer such questions as if *559 she were never hospitalized, she would be evaluated in terms of her abilities rather than being hampered by fears and stereotypes. It is clear that preventing such discrimination benefits society as well as the individual. This is within the intent of the statute and satisfies the third element.
As petitioner has met the three requirements of section 33.14 (a) (1) (b), her psychiatric records should be sealed.
EFFECTS OF SEALING
Since there is no showing by respondents that the court should condition the sealing of the petitioner’s psychiatric records,[13] respondents must respond to any request for petitioner’s sealed psychiatric records pursuant to section 33.14 (a) (2) as if the admission or receipt of services documented in the sealed records had never occurred. Should petitioner be hospitalized for psychiatric care in the future, the sealed records may only be released pursuant to section 33.14 (b).[14]
CONCLUSION
This opinion is published in order to alert the Bench and Bar to section 33.14 of the Mental Hygiene Law and to encourage others like Ms. Smith who have overcome mental illness to use this statute to remove any remaining barriers to their full participation in public and private life.
Petition to permanently seal Mary Smith’s psychiatric records is granted.

. For example, petitioner states that she changed her work from her chosen field of music education to lower paying, lower status clerical jobs to avoid employers who might seek access to and/or discover her history of psychiatric hospitalizations.

. Although located out of State, Butler Hospital has voluntarily consented to the jurisdiction of the court in this proceeding.

. Section 33.14 (a) (2) provides: "Except for such limitations as the court may impose, a court order directing the office of mental health, a facility, or other individual or entity to seal records shall require the office of mental health, facility or other individual or entity to respond to any official or unofficial inquiry concerning the petitioner’s history of mental illness as though the admission or receipt of services documented * * * had never occurred. ” (Emphasis added.)

. Section 33.13, which deals with clinical records and their confidentiality, is discussed infra.

. Section 15.31 (f) provides: "The papers in any proceeding under this article which are filed with the county clerk shall be sealed and shall be exhibited only to the parties to the proceeding or someone properly interested, upon order of the court.”

. The impetus for the bill came from the New York Civil Liberties Union which represented Wade in the Court of Appeals and whose Mental Health Law Project had been active in this area. The bill was sponsored in the Assembly by Robert C. Wertz and the Senate by Kenneth P. LaValle.

. See, Supporting Legis mem from NY Civil Liberties Union (June 26, 1980).

. Discrimination often occurs in hiring and licensing because of records of psychiatric hospitalization. Many people are asked about their history of hospitalization and required to release their records in order to obtain a license or job. The resulting discrimination can be a continuous penalty endured by a patient throughout his or her lifetime. (Supporting Legis mem from NY Civil Liberties Union [1980].)

. Compare Assembly Bills A 4110-A, A 4110-B and Senate Bill S 21034 (1980).

. Pursuant to this subdivision, records may be sealed when: "[T]he petitioner has demonstrated by competent medical evidence that he [or she] is not currently suffering from a mental illness, has not for a period of three years received inpatient services for the treatment of a mental illness, and the interests of the petitioner and society would be best served by sealing the petitioner’s records.”

. It is noteworthy that this section does not require a reexamination of the diagnosis which led to the original commitment. This apparently is in response to Palmer v New York State Dept. of Mental Hygiene (44 NY2d 958), where the court felt that such a reexamination 23 years after the patient’s release would be difficult, if not impossible, although the plaintiff in that case was no longer certified as mentally ill.

. Pursuant to Mental Hygiene Law § 33.14 (a) (1), the court may impose any limitation or exception to the record sealing.

. This subdivision states:
"Records sealed pursuant to this section may be unsealed and made available only:
"(1) upon request of the person who is subject of the sealed records;
"(2) by order of a court upon a demonstration by the party seeking to have the records unsealed that such unsealing is essential to the interests of justice;
"(3) upon the commencement of a suit by the person who is the subject of the sealed records or his representative in which such person’s confinement or treatment during confinement as documented in the sealed records is at issue; or
"(4) seventy-five years after the record has been sealed.”