*955 OPINION OF THE COURT
Gerard M. Weisberg, J.
In this action, we must decide whether the State of New York is answerable in damages when it mistakenly delivered claimant’s confidential psychiatric records to her husband’s attorney instead of to the Family Court as directed by a so-ordered subpoena.
Claimant, Alice Ace, was married to her second husband, Arthur, on March 21, 1971. This union produced three children. The family also included claimant’s daughter, Donna Davids, from her prior marriage.
By June 1976, claimant and Arthur were having marital problems. At that time, claimant suffered an "anxiety attack” and was referred to the Mapleton Clinic of the South Beach Psychiatric Center, an instrumentality of the Office of Mental Health, which is itself an agency of the State of New York. (See, Mental Hygiene Law §§ 7.01, 7.17.)
Claimant and her husband were assigned a therapist whom they saw approximately once per week for several months. In November 1976, Arthur ceased going and claimant continued the sessions alone.
From the outset, claimant was concerned about the confidentiality of the clinic’s records. Specifically, she foresaw the possibility of divorce proceedings in her future and feared the use of the records in such circumstances. Claimant was informed that the records were confidential and not even her husband could see them without a court order. She asked for and was promised to be informed if a subpoena was received.
Claimant continued to attend therapy sessions on and off through 1982. In 1980, Arthur started beating the younger children and allegedly sexually abusing Donna. In 1982, the New York City Department of Social Services brought abuse and neglect proceedings against Arthur. Claimant also commenced divorce proceedings and sought an order of protection. Arthur cross-petitioned for custody of the children, which claimant resisted.
In connection with these proceedings, the Office of the Corporation Counsel of the City of New York, the Law Guardian appointed for the children and Robert Ferrari, Esq., Arthur’s attorney, each subpoenaed claimant’s psychiatric records. In fact, the clinic received at least two subpoenas from Mr. Ferrari, "so ordered” by Judge Richard D. Huttner, *956 then of the Family Court, Kings County. The subpoenas were returnable at that court.
Claimant was informed of the subpoenas and made no attempt to have them quashed. In response, the clinic sent at least one copy of claimant’s records to the Family Court and one copy to Mr. Ferrari’s address listed on the subpoena.
The procedure in the Family Court, Kings County, was that subpoenaed psychiatric records were kept in a file room in the clerk’s office, where they were made available for inspection and review by the parties’ attorneys. While no photocopy machine was available, if the attorney’s office was in the courthouse building, he or she could sign the records out and review them in his or her own office. There was no evidence that attorneys were directed not to make copies on their own machines. On the day of trial, the clerk would bring the records into court where they were routinely introduced or read into evidence.
On or about December 21, 1982, claimant learned that Mr. Ferrari had obtained a copy of her records after they were seen in his possession during a hearing in the Family Court. When the Assistant Corporation Counsel demanded, in open court, that they be returned to the clerk’s office, Mr. Ferrari responded that they were not the court’s copy, but had been sent to him directly in response to his subpoena.
Claimant became extremely distraught over this revelation and demanded that defendant retrieve her file from Mr. Ferrari. It declined to do so. She then determined for herself that with her psychiatric history revealed she had no chance of retaining custody of her children. She therefore discontinued her divorce proceeding and surrendered custody of the children to Arthur. She also feared, without objective evidence, that Arthur had access to the records and intended to show them to any prospective employer she approached. She therefore gave up her ambition to be a child therapist.
In 1985, claimant commenced suit against Mr. Ferrari in the Supreme Court of the State of New York, Kings County, for his having "illegally and in violation of plaintiffs rights obtained her psychiatric records.” It was dismissed by Justice Frank Vaccaro in a decision and order dated July 7, 1987, from which no appeal was taken, which states in pertinent part: "It is clear from the papers submitted that the records were obtained during the course of a Family Court proceeding based upon a court ordered subpoena, and as such, they were *957 not obtained illegally and in violation of plaintiffs rights. The use of such records within the context of a judicial proceeding involving the custody of minor children is within the purview of the best interest of the children involved, is privileged, and does not violate Sec. 33.13 of the Mental Hygiene Law.” Claimant then brought this action against the State of New York.
A physician has a fiduciary duty not to reveal the confidences of his client, the breach of which is compensable in damages. (MacDonald v Clinger, 84 AD2d 482; Doe v Roe, 93 Misc 2d 201; see also, Tighe v Ginsberg, 146 AD2d 268.) Similarly, pursuant to Mental Hygiene Law § 33.13, which creates a private cause of action (Munzer v Blaisdell, 183 Misc 773, affd without opn 269 App Div 970), claimant’s file at the clinic was confidential. (See also, CPLR 4507.) The purpose of both the statutory protection and the common-law duty not to disclose is to encourage individuals to seek medical help by protecting their confidences. (MacDonald v Clinger, 84 AD2d 482, supra; Munzer v Blaisdell, 183 Misc 773, affd without opn 269 App Div 970, supra.)
Neither rule is absolute, however. Thus confidentiality must yield to disclosure in the face of a countervailing public interest such as where the patient is a danger to himself or others (Rea v Pardo, 132 AD2d 442) or where the welfare of minor children is involved. (Baecher v Baecher, 58 AD2d 821; Proschold v Proschold, 114 Misc 2d 568; Matter of Do Vidio v Do Vidio, 56 Misc 2d 79; People ex rel. Chitty v Fitzgerald, 40 Misc 2d 966; see also, Matter of Jacqueline F., 47 NY2d 215.)
Similarly, Mental Hygiene Law § 33.13 specifically authorizes disclosure of psychiatric records upon a court order, and pursuant thereto, portions of a patient’s clinical record may be delivered to other parties. (See, e.g., Brier v State of New York, 95 AD2d 788; Villano v State of New York, 127 Misc 2d 761.)
Here, claimant actively sought to maintain custody of her minor children in contested proceedings. Their welfare was, therefore, an issue and claimant is deemed to have waived whatever common-law or evidentiary (CPLR 4507) privilege against disclosure she had in the file. Similarly, the production was ordered by the Family Court in accordance with the Mental Hygiene Law. Thus, claimant’s sole complaint reduces to the proposition that Mr. Ferrari’s physical possession of the file was unauthorized and therefore tortious.
However, even in the absence of defendant’s actions, Mr. *958 Ferrari could have reviewed claimant’s records at the courthouse and, if he had an office in that building, removed them from the clerk’s office. We also note that as a general proposition, the right to disclosure includes the right to make copies. (Matter of Bradshaw [State of New York], 5 AD2d 511; see also, Brier v State of New York, 95 AD2d 788, supra.)
Alternatively, we recognize that c,ustody litigation, which is often extremely acerbic, may be exacerbated by the unrestrained release of sensitive psychological matter. (Coderre v Coderre, NYLJ, Feb. 26, 1990, at 29, col 6.) For that reason, as well as the policy behind the privilege, disclosure is generally restricted to courthouse review. (See, e.g., People ex rel. Hickox v Hickox, 64 AD2d 412; Matter of S.E.B., 91 Misc 2d 149.) Where, however, further dissemination was required, it has been authorized by the courts. Thus, in Matter of Do Vidio v Do Vidio (56 Misc 2d 79, supra), a custody proceeding, it was stated that where the mental examination of the wife was appropriate that the husband would be authorized to obtain a copy of her psychiatric records for use by the psychiatrist in connection therewith.
Claimant complains that she lost custody of her children because Mr. Ferrari was able to review her file. That access, however, was authorized by case law, statute and court order. It was, therefore, not wrongful. Claimant also testified that she abandoned her career goal of being a child therapist based on Arthur’s having possession, through Mr. Ferrari, of her psychiatric record and her fears about being confronted with it in the future.
First, there was no evidence presented that Arthur or Mr. Ferrari had ever shown the file to anyone unauthorized to see it. While Mr. Ferrari was alleged to once having stated to claimant in court that he knew how to use the file, we understand that to mean that he knew how to employ it in the custody proceeding, which was authorized and appropriate. Any inhibitions claimant felt in terms of her career goals would have logically resulted from her having to reveal her treatment on employment applications (see, Matter of Smith v Butler Hosp., 144 Misc 2d 554) which had nothing to do with Mr. Ferrari’s possession of the file. In connection therewith, we note that claimant has since received a Bachelor’s degree, entered law school and successfully completed her first year of studies.
Thus, we find that the disclosure of the file to Mr. Ferrari *959 was authorized by court order. While his possession was arguably not, it may well have been obtainable by him by other legal means particularly if claimant had continued the custody proceeding. In either event, claimant’s unhappiness stems not from his lack of explicit authority but from the fact of his possession, whether authorized or not, and from her unfounded and speculative fears regarding its possible improper use in the future.
To be compensable, psychological damages must be the direct consequence of an injury which resulted from the defendant’s breach of duty. (Martinez v Long Is. Jewish Hillside Med. Center, 70 NY2d 697.) Prospective consequences must be expected to flow with reasonable probability from the harm. (Askey v Occidental Chem. Corp., 102 AD2d 130.)
Here, the breach was the delivery of the file to Mr. Ferrari. No injury has resulted therefrom. Claimant seeks compensation for her present fear that Arthur may improperly reveal or use it in the future. On the record before us, we cannot say that claimant has shown that to be a reasonable possibility.
We find this case to be more analogous to Nadal v State of New York (110 AD2d 890). In Nadal, escaped inmates broke into claimants’ home. Their claim for psychological damages, based solely on their uncontrollable fear of returning home when the house was empty, was held to fail to state a cause of action. In other words, the unfounded fear that some harm would result in the future was held uncompensable. (See also, Hare v State of New York, 143 Misc 2d 281 [unfounded fear of acquiring AIDS not proximate result of negligence].) So too here, we find claimant’s fear of future harm to be too speculative to support an award of damages.
Finally, as was stated above, claimant, sued Mr. Ferrari for damages based on his possession of the file. The decision dismissing the action, however, found no violation of the Mental Hygiene Law. Claimant is therefore collaterally es-topped from relitigating that issue. If Mr. Ferrari’s possession was not wrongful, a fortiori, defendant’s delivery of it to him should not be tortious.
For the foregoing reasons, the claim is dismissed.*

 During the trial, the court granted claimant’s application directing the clerk of this court to seal the records. In the spirit of this order, her name and those of persons related to her have been fictionalized.