George **MADDEN** and Roseanne **Cohen**,

v.

**CREATIVE SERVICES, INC., Alan T. Sklar, Individually and as an Officer and Director of Creative Services, Inc., et al.**

No. 92–CV–6425T.

United States District Court, W.D. New York.

Aug. 20, 1993.

A. Vincent Buzard, Rochester, NY, for George Madden, Rosanne Cohen.

Norman M. Spindelman, Karl S. Essler, Fix, Spindelman, Turk, Himelein & Shukoff, Rochester, NY, for Creative Services, Inc., Alan T. Sklar, Ralph Douglas Howe, Jr., Michael Sean Cole.

Kenneth A. Payment, Harter, Secrest & Emery, Rochester, NY, for Nat. Amusements, Inc., Sumner Redstone.

## DECISION AND ORDER

TELESCA, Chief Judge.

## INTRODUCTION

Plaintiffs, George Madden and Roseanne Cohen ("plaintiffs"), brought this diversity action following a much-publicized break-in by defendants Ralph Douglas Howe, Jr. ("Howe") and Michael Sean Cole ("Cole") into the office of an attorney representing a citizens group lead by plaintiff Madden. This group, the Suburban Public Safety Coalition, opposed defendant National Amusements, Inc.'s plan to build a 12-screen theater complex in a residential area of Pittsford, New York. Defendant Creative Services, Inc., which employed Howe and Cole, was hired by National Amusements, purportedly to investigate whether competitors of National Amusements were financing the opposition to the theater complex.

In their Amended Complaint, plaintiffs allege nine causes of action, including claims of Intentional Infliction of Emotional Distress, Conversion and Intentional Interference with the Attorney–Client Privilege. Defendants National Amusements and Redstone now move for summary judgment and dismissal of the Amended Complaint pursuant to Rules 56 and 12(c) of the Federal Rules of Civil Procedure. In lieu of serving an Answer, defendants Creative Services, Sklar, Howe and Cole move pursuant to Rule 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted. In addition, defendant Sklar has moved to dismiss on

grounds of lack of personal jurisdiction. For the reasons set forth below, defendants' motions pursuant to Rules 12(c) and 12(b)(6) are granted, and the Complaint is dismissed.

## BACKGROUND

In 1991, National Amusements sought permission to construct a 12–screen theater complex in Pittsford, New York. During the course of zoning proceedings before the Pittsford Town Board, a local citizens group, led by plaintiff Madden and represented by Francis Kenny ("Kenny") of the law firm of Nixon, Hargrave, Devans & Doyle ("Nixon, Hargrave"), opposed rezoning of the proposed site of the theater complex. For a variety of reasons, National Amusements suspected that Nixon, Hargrave, which claimed to be acting *pro bono* in opposition to the rezoning, was in fact being paid by its client Loew's Theaters, Inc. to lend its legal advice and local prestige to the effort. Towey Affidavit, at ¶ 6.[1]

In order to inform the Town Board, as part of its decision-making process, that "powerful anti-competitive interests were covertly backing the opposition and supporting it financially," *Id.*, officials at National Amusements (other than defendant Redstone) retained Creative Services "to conduct a lawful and appropriate investigation" of the role played by Loew's. *Id.* Prior to this assignment, Creative Services had worked for National Amusements in the evaluation and design of security services and procedures for National Amusements's theaters. *Id.*, at 3–4. In hiring Creative Services to investigate the potential extent of Loew's involvement, the National Amusements officials dealt exclusively with Creative Services's President, defendant Sklar.

In November, 1991, defendants Howe and Cole of Creative Services came to Rochester in the course of their investigation. On the false pretext that they had left a ring in the

---

1. To the extent that the court decides to consider matters outside of the complaint in ruling on a motion pursuant to Rule 12(b)(6) or Rule 12(c), "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Although I have incorporated information from documents outside the Complaint in the Background section of the Decision and Order, I do not rely on such information for purposes of my decision. Rather, my rulings on defendants' 12(b)(6) and 12(c) motions are based *solely* on the allegations pleaded in the Complaint.

building in which Nixon, Hargrave is located, Howe and Cole gained access to Kenny's 9th floor office. A building worker subsequently found the investigators photographing documents which presumably related to the zoning dispute. Although security guards escorted Howe and Cole to the lobby, they managed to flee the scene, but not before one of the guards made note of their automobile's license plate.

Armed with the license plate number and a description of the investigators' car, Kenny and his son scoured local motel parking lots in search of the trespassers. Howe and Cole were eventually located by Kenny, who had them arrested the next morning when they were about to enter their car.

The break-in and surrounding circumstances were publicized in Rochester, Boston and national newspapers. In an unsworn declaration, defendant Sklar maintained that no one at National Amusements ever suggested or requested that Creative Services or its investigators do anything unlawful or inappropriate. Plaintiff Madden told a local newspaper that he believed that Howe and Cole, in the guise of interested home buyers, telephoned plaintiffs' real estate agent and made an appointment to view their condominium, which was for sale. (*see* appendix to the Payment Declaration). As the appointment was for the morning after the break-in, when Howe and Cole were already in police custody, it was never kept. According to a Rochester police investigator, Howe admitted to having made the call. (See Ex. A to Buzard Affidavit). Howe also stated that "he had been directed by his boss to get into the victim [sic] offices, and see if they could gather any information, pertaining to this case." *Id.*

## DISCUSSION

### I. Legal Standards

#### A. Judgment on the Pleadings

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." Under Rule 12(c), any party may move to dismiss on the pleadings "[a]fter the pleadings are

closed...." Defendants National Amusements and Redstone have filed an Answer, and thus move under Rule 12(c), while the remaining defendants have moved under Rule 12(b)(6) in lieu of serving an Answer.

For purposes of these motions, judgment is appropriate only "where the material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). The court must take "the well-pleaded material facts alleged in the complaint ... as admitted," *Gumer v. Shearson, Hammill & Co., Inc.,* 516 F.2d 283, 286 (2d Cir.1974), and must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Falls Riverway Realty v. City of Niagara Falls,* 754 F.2d 49, 56 (2d Cir.1985). The claims in the Complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### II. Intentional Infliction of Emotional Distress

Plaintiffs allege that defendants Howe and Cole followed them, surreptitiously took their photograph and attempted to enter plaintiffs' residence illegally and under false pretenses. Upon learning of these events, and of the break-in of their attorney's office, plaintiffs "became extremely distraught emotionally, fearful for their personal safety and security, and acutely sensitive to any circumstances which appeared even slightly suspicious." Amended Complaint, ¶ 24. Plaintiffs suffer from "a fear of being followed, emotional distress, increased anxiety, nightmares, and [were] otherwise injured as a result of Defendants' conduct." *Id.,* ¶ 25–26. These events and plaintiffs' reaction to them form the basis of their claim for intentional infliction of emotional harm.

To recover on a claim of intentional infliction of emotional distress under New York law, plaintiffs must prove:

1. an extreme and outrageous act by the defendant[s],
2. an intent to cause severe emotional distress,
3. resulting severe emotional distress,
4. caused by defendant[s'] conduct.

*Sabatowski v. Fisher Price Toys,* 763 F.Supp. 705, 716 (W.D.N.Y.1991), *quoting Burba v. Rochester Gas and Electric Corp.,* 90 A.D.2d 984, 456 N.Y.S.2d 578, 579 (4th Dep't, 1982).

The tort of intentional infliction of emotional distress "predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985). The conduct alleged "must consist of more than mere insults, indignities, and annoyances[.]" *Leibowitz v. Bank Leumi Co.,* 152 A.D.2d 169, 182, 548 N.Y.S.2d 513 (2d Dep't, 1989) (citations omitted). *See also Owen v. Leventritt,* 174 A.D.2d 471, 571 N.Y.S.2d 25–26 (1st Dep't, 1991) ("mere threats, annoyance or other petty oppressions, no matter how upsetting, are insufficient to constitute the tort of intentional infliction of emotional distress").

Accepting the pleadings as true, I do not find that the conduct complained of (the break-in scheme or the scheme to pose as home buyers), is, as a matter of law, so "atrocious," "intolerable" "extreme" or "outrageous" as to "transcend the bounds of decency." As such, I find that plaintiffs' pleading fails to satisfy the first element of the cause of action.

Learning of the break-in and the scheme to pose as home buyers was undoubtedly discomforting and annoying, but the Complaint does not allege that the plaintiffs were either participants in or observers of the acts complained of, nor were they subjected to direct contact with the defendants. The defendants, who were arrested almost immediately after the break-in into the Attorney's office, never even entered plaintiffs' home. While the alleged misconduct is offensive and certainly cannot be condoned, it nonetheless does not rise to an extreme or outrageous level sufficient to meet the threshold requirements for the tort. *See, e.g., Leibowitz,* 152 A.D.2d at 182, 548 N.Y.S.2d 513 (racial and ethnic slurs suffered directly by the plaintiff, while deplorable, did not satisfy the threshold for extreme or outrageous conduct).

Moreover, with regard to the break-in of attorney Kenny's office, that activity was directed toward Kenny and not the plaintiffs. New York does not recognize a right to recover for emotional injury sustained as a result of a defendant's breach of duty to a third person, including a family member. *Casale v. Unipunch, Inc.,* 177 A.D.2d 1029, 578 N.Y.S.2d 46, 47 (4th Dep't, 1991) (citations omitted).

In *Lauver v. Cornelius,* 85 A.D.2d 866, 446 N.Y.S.2d 456 (3rd Dep't, 1981), the court dismissed plaintiffs' claim for intentional infliction of emotional distress against a defendant who sexually molested their children. Because the parents were not participants or even observers of the tortious acts which injured their children and which inflicted psychic distress upon them, relief was limited to those who were directly or intentionally harmed. It follows, then, that plaintiffs in this case have no such claim merely because two private investigators illegally entered their attorney's office. Accordingly, defendants' motion for judgment on the pleadings and to dismiss the first cause of action are granted.

### III. Invasion of the Attorney–Client Relationship

In their second cause of action, plaintiffs contend that by reading and photographing the documents in attorney Kenny's office, defendants Howe and Cole violated the attorney-client privilege set forth in § 4503 of the New York Civil Practice Law and Rules. Plaintiffs acknowledge that no court in New York has addressed the issue of whether a client has a civil action for the invasion of the attorney-client privilege, and that "they are seeking both to create new

causes of action and to fit a unique set of facts within previously recognized theories of tort liability." (Plaintiffs' Mem. of Law, at 7).

§ 4503 provides, in pertinent part, that any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, in any action, disciplinary trial or hearing, or administrative proceeding or hearing ...

Thus, by its terms, § 4503 prohibits the disclosure of confidential attorney-client communications without the client's knowledge. As the defendants point out, there is nothing in the Amended Complaint to indicate that defendants Howe or Cole ever disclosed, to anyone, the substance of the information they obtained from Attorney Kenny's office or that this information was used in the course of any proceeding contemplated by the statute. Moreover, other than mental distress, plaintiffs have not alleged that they have suffered an injury as a result of the unauthorized examination of the documents in Kenny's office. Accordingly, the Complaint fails to set forth a cause of action, and defendants' motions for judgment on the pleadings and for dismissal of plaintiffs' second cause of action are granted.

## IV. Conversion

■ In their third cause of action, plaintiffs allege that the actions of defendants Howe and Cole in reading and photographing documents in Kenny's office constituted the tort of conversion. Defendants move for dismissal of this claim pursuant to Rule 12(c) because plaintiffs failed to plead the requisite elements of conversion. I agree.

The elements of conversion include:

1. title to the property converted, or a right to possession of that property;

2. an act of conversion by the defendant; and

3. damages caused by the conversion.

*Brass v. American Film Technologies, Inc.*, 780 F.Supp. 1001, 1003 (S.D.N.Y.1991). The Complaint fails to satisfy the first element because conversion requires the exercise of unauthorized dominion over the property in question "'to the exclusion of plaintiff's rights.'" *Caballero v. Anselmo*, 720 F.Supp. 1088, 1098 (S.D.N.Y.1989) (citations omitted); *see also Glass v. Wiener*, 104 A.D.2d 967, 480 N.Y.S.2d 760, 761 (2d Dep't, 1984) ("[i]nterference with another's right to possession is the essence of conversion").

■ Defendants Howe and Cole did nothing to deprive plaintiffs of their right to possess their documents, which were in Attorney Kenny's office at all times. Accordingly, there was no conversion. *See Allen v. Murray House Owners Corp.*, 174 A.D.2d 400, 571 N.Y.S.2d 698, 701 (1st Dep't, 1991) ("[because] plaintiffs at all times possessed and exercised the prerogatives of ownership, no conversion by defendants of plaintiffs' property ever took place").

■ Even if plaintiffs are claiming that it was the information within the documents which was converted, and not the documents themselves, they still have failed to allege a cause of action for conversion in New York, wherein courts have refused to recognize an action for conversion based on interference with intangible property rights. *Ippolito v. Lennon*, 150 A.D.2d 300, 542 N.Y.S.2d 3, 6 (1st Dep't, 1989). Only "novel" information, such as trade secrets, can be protected from conversion under New York law, *Murray v. National Broadcasting Co.*, 844 F.2d 988 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988). Plaintiffs admit that no decisional authorities support their theory that privileged attorney-client information may be the subject of an action for conversion in New York, and the Amended Complaint fails to allege that the information seen by Howe and Cole falls within the "novel" category.

■ Moreover, the pleadings before me fail to demonstrate that plaintiffs suffered any measurable harm from the activities of Howe and Cole, other than the possible mental anguish described in their first cause of action. In New York,

[t]he essence of the tort of conversion is not the mere exercise of some dominion

over the property of another but such an exercise as *actually causes* some real detriment to the *rights* of the owner of the thing over which dominion is exercised....

*160 Realty Corp. v. 162 Realty Corp.,* 113 N.Y.S.2d 618, 621 (Sup.Ct.N.Y.Co.1952) (emphasis supplied), *aff'd* 280 A.D. 762, 113 N.Y.S.2d 678 (1st Dep't, 1952) (citing cases); *accord Tow v. Maidman,* 56 Misc.2d 468, 288 N.Y.S.2d 837 (Sup.Ct. Nassau Co.1968). Accordingly, defendants' motions for judgment on the pleadings and for dismissal of plaintiffs' third cause of action are granted.

## V. Unlawful Search and Seizure

█ In their fourth cause of action, plaintiffs allege that the unlawful entering of their attorney's law office and the reading and photographing of documents therein by Howe and Cole constituted an unlawful search and seizure under § 8 of the New York Civil Rights Law. Plaintiffs admit that there are no cases which reveal the existence of a private right of action for damages against a private person who violates this section. In the absence of any legal basis or authority in support of this claim, this Court declines plaintiffs' invitation to create a private right of action. Accordingly, plaintiffs' fourth cause of action is dismissed pursuant to Rules 12(c) and 12(b)(6).

## VI. Interference with the Right to Petition Governmental Agencies

█ In their fifth cause of action, plaintiffs maintain that the acts complained of constituted interference with their right to petition governmental agencies to obtain a legal remedy. Even assuming that such a right is inherent in a democratic society, it is clear that there is no legal remedy for its violation. "The law has long recognized that it need not provide relief for every injury suffered[,]" *Howard v. Lecher,* 42 N.Y.2d 109, 397 N.Y.S.2d 363, 366 N.E.2d 64 (1977), and again, this Court declines plaintiffs' invitation to create a remedy where none previously existed. Accordingly, the fifth cause of action is dismissed pursuant to Rules 12(c) and 12(b)(6).

## VII. Negligent Infliction of Emotional Harm

Plaintiffs' sixth cause of action alleges a claim against defendants National Amusements and Redstone for emotional harm damages resulting from the defendants' "negligent retention, instruction and supervision" of defendants Creative Services, Sklar, Howe and Cole. Plaintiffs' seventh cause of action alleges an identical claim against defendants Creative Services and Sklar.

█ Plaintiffs' sixth and seventh claims are not actionable in New York. A plaintiff claiming emotional injuries based upon merely negligent conduct must show that he or she was within the so-called "zone of danger" and thus exposed to an unreasonable risk of bodily injury as a result of the defendants' lack of care. *Bovsun v. Sanperi,* 61 N.Y.2d 219, 233, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984). Plaintiffs do not allege that they were within a zone of danger or that they were exposed to an unreasonable risk of bodily injury.

█ Moreover, the facts as alleged here are similar to those in *Nadal v. State of New York,* 110 A.D.2d 890, 488 N.Y.S.2d 442 (2d Dep't, 1985), wherein the court denied recovery for emotional injuries suffered by plaintiffs after escaped inmates from a prison work gang burglarized their home. Plaintiffs were not home at the time, but they claimed that learning of the burglary caused them to develop an uncontrollable fear of returning home when the house was empty or of being in their home alone. The court observed that "[w]hile the invasion of the sanctity of claimants' home was understandably emotionally shocking, such injuries are compensable only when they are a direct, rather than a consequential, result of the breach of a duty." 110 A.D.2d at 891, 488 N.Y.S.2d 442 (citation omitted). Because plaintiffs failed to allege that they sustained injuries directly from defendants' alleged breach (rather than as a consequence thereof), defendants' motions for judgment on the pleadings and to dismiss in the instant case are granted and plaintiffs' sixth and seventh causes of action are dismissed.

### VIII. Plaintiffs' Derivative Claims of Loss of Consortium

Each plaintiff alleges a derivative claim of loss of consortium as a result of the defendants' unlawful conduct. Having dismissed the principal causes of action as a matter of law, each of the derivative claims must fail as well. *See, e.g., Gastwirth v. Rosenberg,* 117 A.D.2d 706, 707, 499 N.Y.S.2d 95 (2d Dep't, 1986).

### CONCLUSION

For the reasons set forth above, defendants' motions to dismiss the Complaint are granted, and the case is dismissed.

ALL OF THE ABOVE IS SO ORDERED.