OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Does an intruder’s unauthorized inspection of a client’s documents in a lawyer’s office give rise to a cause of action by the client against the intruder for violation of the attorney-client privilege? On the facts presented, we answer this question, certified to us by the United States Court of Appeals for the Second Circuit, in the negative.
 

 As set forth in the parties’ submissions, plaintiff George Madden founded a neighborhood coalition to oppose construction of a 12-screen movie theater complex by defendant National Amusements, Inc., a movie theater chain, in a residential area of the Town of Pittsford. Madden enlisted Francis E. Kenny, a partner in the Rochester firm of Nixon, Hargrave, Devans & Doyle, to provide
 
 pro bona
 
 legal services to the coalition, which included petitioning the Town Board to deny
 
 *742
 
 the rezoning application filed by National. National in turn retained defendant Creative Services, Inc., a private investigative firm. According to plaintiffs, the purpose was to intimidate and discredit them; according to defendants, the purpose was to uncover any possible connection between Madden and National’s competitor Loews Theaters, Inc., also a Nixon, Hargrave client.
 

 On November 14, 1991, Creative dispatched Ralph Douglas Howe, Jr. and Michael Sean Cole- — Massachusetts-based investigators not licensed in New York — to place Madden and his wife, plaintiff Roseanne Cohen, under surveillance. The investigators allegedly followed and photographed plaintiffs without their knowledge. Posing as prospective homebuyers, Howe and Cole also made an appointment with a real estate agent to visit plaintiffs’ residence.
 

 After business hours the next day — Friday, November 15— Howe and Cole entered the Nixon, Hargrave offices claiming to have lost a ring. They gained access to Kenny’s office, where building personnel found them photographing purportedly privileged documents about the zoning dispute.
 
 [1]
 
 When briefly left alone in the offices, Howe and Cole fled but were spotted at a local motel and arrested the following morning. The arrest preempted the scheduled visit to plaintiffs’ residence. Defendants never developed the photographs, and no disclosure of documents or information is alleged by plaintiffs. Defendant employers deny authorizing or knowing of the investigators’ conduct.
 

 Charged with third degree burglary (Penal Law § 140.20) and petit larceny (Penal Law § 155.25), Howe and Cole each pleaded guilty to trespass (Penal Law § 140.05). Additionally, an action was instituted by Attorney Kenny against the investigators and their employers
 
 (Kenny v Creative Servs.,
 
 US Dist Ct, WD NY, 92 Civ 6301T).
 

 Plaintiffs commenced the present action in the United States District Court for the Western District of New York against Creative, its president (Alan T. Sklar), Howe, Cole, National and its president (Sumner Redstone), alleging the following causes of action: intentional interference with the attorney-client privilege; intentional infliction of emotional distress; conversion of documents; unlawful search and sei
 
 *743
 
 zure; intentional interference with the right to petition governmental agencies; negligent retention, instruction and supervision against the employer defendants; and loss of consortium on behalf of each plaintiff. Plaintiffs sought $3.3 million in damages — $1 million in compensatory damages for their feelings of personal insecurity, fear of being followed, emotional distress, increased anxiety and nightmares; $300,000 for loss of consortium; and $2 million in punitive damages. Defendants moved to dismiss the complaint for failure to state a claim or for summary judgment (which elicited affidavits from both sides supplementing their pleadings), and defendants National and Redstone additionally sought sanctions against plaintiffs and their counsel for groundless litigation.
 

 The District Court dismissed the complaint in its entirety for failure to state a claim, declining to impose sanctions, and plaintiffs appealed to the United States Court of Appeals for the Second Circuit. The Second Circuit certified two questions to us — whether a cause of action for invasion of the attorney-client privilege was stated and, if so, whether economic loss was an element of such a cause of action — indicating that it was “inclined to agree” with the District Court’s disposition as to all other causes of action (24 F3d 394, 396). Agreeing that the proposed cause of action for invasion of the attorney-client privilege presents a State law issue of interest, we accepted the certified questions (83 NY2d 934), to which we now turn.
 

 The asserted legal basis, or theory, of plaintiffs’ damage claim for invasion of the attorney-client privilege is contained in three paragraphs of the amended complaint:
 

 “32. All documents and information provided by Plaintiffs to Francis E. Kenny, Esq. were provided in the course of the attorney-client relationship and are thus protected under the attorney-client privilege set forth in § 4503 of the New York Civil Practice Law and Rules.
 

 ”33. Defendants wilfully and intentionally invaded and interfered with Plaintiffs’ professional relationship with their attorney in violation of the attorney-client privilege.
 

 “34. As a result of Defendants’ intentional interference and invasion in violation of the attorney-client privilege, Plaintiffs have suffered compensatory damages in the sum of One Million Dollars ($1,000,000.00) and punitive damages in the sum of Two Million Dollars ($2,000,000.00).”
 

 
 *744
 
 In assessing the viability of plaintiffs’ claim, the District Court measured the allegations against the words of CPLR 4503. The statute by its terms bars only the disclosure of confidential communications in enumerated proceedings. In that no such disclosure is alleged by plaintiffs, the court struck the claim, adding that "other than mental distress, plaintiffs have not alleged that they have suffered an injury as a result of the unauthorized examination of the documents in Kenny’s office.” (872 F Supp 1205, 1210.)
 

 Defendants’ motions to dismiss, which would close the courthouse doors to plaintiffs before full discovery and trial, oblige us to look beyond the precise theory asserted in the pleading and to dismiss only if no cause of action is revealed by the facts. Even on this broader review, however, we agree with the District Court that these plaintiffs fail to state a cause of action.
 

 While the subject of remedies for breach of confidence has generated scholarly interest
 
 (see, e.g.,
 
 Note,
 
 Confidentiality: A Measured Response to the Failure of Privacy,
 
 140 U Pa L Rev 2385 [1992]), no New York court — or apparently any other— has considered whether a client can recover damages solely for a third party’s intrusion on the attorney-client privilege.
 
 [2]
 
 Some New York courts have recognized a cause of action by patients against physicians
 
 (see, e.g., Oringer v Rotkin,
 
 162 AD2d 113, 114 [psychologist];
 
 MacDonald v Clinger,
 
 84 AD2d 482, 486-489 [psychiatrist];
 
 Doe v Roe,
 
 93 Misc 2d 201, 209-214,
 
 supra
 
 [psychiatrist]) and by client against social worker
 
 (see, Harley v Druzba,
 
 169 AD2d 1001, 1002). These claims have been premised on violation of a fiduciary or contractual relationship, which is not the theory of the present case.
 

 That a proposed cause of action has not previously been recognized by us, or indeed by any other court in the Nation, is itself inconclusive, for it is the strength of the common law to respond, albeit cautiously and intelligently, to the demands of commonsense justice in an evolving society.
 

 Analysis begins by defining the interest plaintiffs would, by the cause of action they urge be added to the law of New York, seek to protect: the confidentiality of attorney-client communications.
 

 
 *745
 
 At common law, communications made in confidence between attorney and client were held confidential as a matter of the attorney’s code of honor
 
 (see,
 
 Richardson, Evidence § 410 [Prince 10th ed]). That precept is embodied in the Code of Professional Responsibility binding attorneys to keep private the confidential communications and secrets of their clients on pain of professional discipline, including loss of their license to practice law
 
 (see,
 
 DR 4-101 [22 NYCRR 1200.19];
 
 see also,
 
 EC 4-4). The motivating force behind insistence on confidentiality is that it promotes effective representation; clients should be encouraged to speak fully and freely to counsel, secure in the knowledge that the attorney will not expose their confidences
 
 (Spectrum Sys. Intl. Corp. v Chemical Bank,
 
 78 NY2d 371, 377). As we noted in
 
 Matter of Priest v Hennessy
 
 (51 NY2d 62, 72): "The adversarial nature of our legal system puts a premium on free and unconstrained access to legal advice and, in so doing, re-emphasizes how essential it is that we do not slacken in our support for the strong public policy favoring confidentiality of attorney-client communications.”
 

 While rooted in the common law, the attorney-client privilege has been codified in CPLR 4503. As defined by the Legislature, it is an evidentiary privilege that protects against disclosure of confidential communications only in specified proceedings
 
 (see, by contrast,
 
 CPLR 4504 [a] [physician barred from disclosing any information acquired in professional relationship]). The privilege applies not to all confidential communications between client and counsel, but only to those of a legal character relating to the engagement
 
 (Rossi v Blue Cross & Blue Shield,
 
 73 NY2d 588, 593). It is subject to exceptions, both legislative (CPLR 4503 [b]) and Judge-made
 
 (see,
 
 Alexander, Practice Commentaries, McKinneys Cons Laws of NY, Book 7B, CPLR C4503:5, at 580). Finally, in that the attorney-client privilege is — like all privileges — a limitation on the truth-seeking process, the statute is strictly construed
 
 (Matter of Priest v Hennessy,
 
 51 NY2d, at 68).
 

 Plaintiffs understandably do not claim a private right of action under CPLR 4503. A private right of action will be implied only where the plaintiff is one of the class for whose particular benefit the statute was enacted, where recognition of a private right of action would promote the legislative scheme, and where creation of such a right would be consistent with the legislative scheme
 
 (see, e.g., Sheehy v Big Flats
 
 
 *746
 

 Community Day,
 
 73 NY2d 629, 633). Plainly plaintiffs would fail that test, as they fall within neither the statutory terms nor the legislative intent, which reveals no thought of creating a private cause of action against third parties.
 

 Rather, plaintiffs urge that a new tort claim be created for third-party intrusions because, as a matter of public policy, the confidentiality of attorney-client communications is of supervening societal importance. In plaintiffs’ words, damages are necessary in order "to vindicate fully the attorney-client privilege and to send a message to those who would invade the privilege that they do so at their peril.” On the facts before us, we cannot agree that either the protection of plaintiffs’ right or the prosecution of defendants’ wrong requires that we recognize the proposed new claim for damages.
 

 Tort liability of course depends on balancing competing interests: "the question remains who is legally bound to protect [plaintiffs’ right] at the risk of liability. * * * [To] identify an interest deserving protection does not suffice to collect damages from anyone who causes injury to that interest”
 
 (Humphers v First Interstate Bank,
 
 298 Ore 706, 713-716, 696 P2d 527, 530-533). Not every deplorable act — as the intentional trespass here surely was — is redressable in damages.
 

 Imposing a new tort duty, and tort liability for compensatory and punitive damages, is unquestionably a "part of this Court’s important common-law tradition and responsibility”
 
 (Trombetta v Conkling,
 
 82 NY2d 549, 553). We exercise that responsibility with care, mindful that a new cause of action will have foreseeable and unforeseeable consequences, most especially the potential for vast, uncircumscribed liability
 
 (Trombetta,
 
 82 NY2d, at 554;
 
 Tobin v Grossman,
 
 24 NY2d 609, 615).
 

 The potential expanse of the proposed cause of action is evident. A claim for third-party intrusions on attorney-client confidences necessarily envelops damage claims against attorneys themselves, which we have yet to recognize. Additionally, such claims could hardly be confined to attorney-client confidences; certainly no rational distinction could be made among the privileged relationships recognized by the Legislature. Of concern as well is that, under existing tort law, proven emotional injury is ordinarily as fully compensable as economic injury
 
 (see, Kennedy v McKesson Co.,
 
 58 NY2d 500, 504-505;
 
 Ferrara v Galluchio,
 
 5 NY2d 16, 21;
 
 see also,
 
 Ausubel,
 
 Recovery for Psychic Injury in New York,
 
 58 NY ST BJ 43 [Jan. 1986]; Prosser and Keeton, Torts § 12 [Lawyer’s 5th ed]).
 

 
 *747
 
 Nor do the facts before us justify opening this new avenue— or, more realistically, thoroughfare — of liability. The professed basis for plaintiffs’ claim is protection of the attorney-client privilege, yet in this case they allege no harm that is tied to violation of the attorney-client privilege, no “injury [suffered] as a result of the unauthorized examination of the documents in Kenny’s office” (in the words of the District Court) (872 F Supp 1205, 1210,
 
 supra).
 
 The alleged damage resulting from the third-party intrusion is solely a generalized fear for personal safety and security that might accompany a theft or trespass on one’s property. A new cause of action for intrusion on the attorney-client privilege should at least require some element of harm to plaintiffs that arises directly from a breach of this privilege.
 

 It is perhaps because of the adequacy of existing remedies to deter third-party invasions of the attorney-client privilege that no court before us has been asked to impose the liability plaintiffs now seek
 
 (see, by contrast, Caceci v Di Canio Constr. Corp.,
 
 72 NY2d 52, 57-58). Those who attempt an unlawful intrusion by fraud, trespass or force, and those in complicity with them, may face criminal penalties; private investigators are additionally subject to license revocation or, if unlicensed, criminal sanctions
 
 (see,
 
 General Business Law art 7). Attorneys are encouraged by available disciplinary sanctions and negligence law to secure clients’ privileged documents adequately, and might even themselves be subject to damages for breach of confidence. There are existing causes of action, such as intentional infliction of emotional distress and conversion, simply not made out on the facts before us. Finally, had defendants’ examination of confidential documents prejudiced plaintiffs in a zoning or other proceeding, sanctions could have been sought
 
 (see, Lipin v Bender,
 
 84 NY2d 562).
 

 In the end, it is clear that plaintiffs would by this new cause of action, the functional equivalent of a common-law privacy tort, merely circumvent established privacy law
 
 (see, Howell v New York Post Co.,
 
 81 NY2d 115, 123;
 
 Freihofer v Hearst Corp.,
 
 65 NY2d 135, 141). In this case, that is neither necessary to protect the private interest at issue nor prudent as a matter of public policy.
 

 Accordingly, certified question No. 1 should be answered in the negative and certified question No. 2 not answered as unnecessary.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 
 *748
 
 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and records submitted, certified question No. 1 answered in the negative and certified question No. 2 not answered as unnecessary.
 

 [1]
 

 . Plaintiffs annex to their opposition papers certain of the documents, which consist of suggested strategies for the zoning dispute — a dispute in which the citizens’ group apparently prevailed.
 

 [2]
 

 . In
 
 Doe v Roe
 
 (93 Misc 2d 201) and
 
 Hammonds v Aetna Cas. & Sur. Co.
 
 (243 F Supp 793 [ND Ohio 1965]), the third party was a joint tortfeasor who induced the physicians’ breach of confidence. In this case, by contrast, plaintiffs make no claim that Attorney Kenny participated in the trespass. They seek relief only against the third parties.