**Opinion issued November 26, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00097-CV**

**NO. 01-23-00102-CV**

**NO. 01-23-00103-CV**

**NO. 01-23-00392-CV**

**NO. 01-23-00393-CV**

———————————

**IN RE LUMINANT GENERATION COMPANY LLC, NRG TEXAS POWER LLC, CALPINE CORP., EXGEN HANDLEY POWER, LLC N/K/A CONSTELLATION HANDLEY POWER LLC, ET AL., Relators**

---

**Original Proceeding on Petition for Writ of Mandamus**

---

## OPINION DISSENTING FROM THE DENIAL OF EN BANC RECONSIDERATION

[T]he spirit of personal liberty and individual right, which they embodied, was preserved and developed by a progressive growth and wise adaptation to new circumstances and situations of the forms and

processes found fit to give, from time to time, new expression and greater effect to modern ideas of self-government. . . . This flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law.

*Hurtado v. California*, 110 U.S. 516, 530 (1884).

\* \* \*

As Winter Storm Uri struck Texas in February 2021, large swaths of the state's electricity grid failed, causing mass power outages across the state. Seeking recompense for the damages caused by those outages, injured retail power customers brought suit against entities involved in the electricity market in Texas, including wholesale power generators, asserting claims for negligence, gross negligence, negligent undertaking, and nuisance. The wholesale power generators moved for dismissal of the entire case under Rule 91(a), and the trial court granted the motion in part and denied it in part. This Court conditionally granted the generators' petitions for mandamus relief, directing the trial court to dismiss the customers' case in toto. *In re Luminant Generation Co. LLC*, No. 01-23-00097-CV, 2023 WL 8630982, at \*1 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, orig. proceeding). The panel reached this conclusion because it is "not aware of any controlling Texas authority under this current statutory scheme, and this retail customers have cited none, that holds a wholesale power generator owes a legal duty to continuously supply electricity to the grid." *Id.* at \*6. The Court went on to conduct a *Phillips* analysis to determine whether to recognize a duty owed by the

2

wholesalers to the customers, ultimately concluding that "imposing any new such duty on wholesale power generators is more appropriate for the Legislature." *Id.* at *10; *see Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The customers then filed two motions for en banc reconsideration.

Rule 91a states that a "cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. A Rule 91(a) motion to dismiss should "address the pleadings or the deficiency of any cause of action" and a court should not consider evidence. *AC Ints., L.P. v. Tex. Comm'n on Env't Quality*, 543 S.W.3d 703, 706 (Tex. 2018) (holding that Rule 91(a) motion to dismiss "was not the proper motion to file" when defendant asked court to dismiss appeal because plaintiff failed to comply with statutory requirement); *see In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding); *see also ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 880 (Tex. 2018). To establish that there is no basis in law for a Rule 91(a) motion to dismiss, the

> defendant must show that recovery on the claims in the plaintiff's petition is foreclosed (i.e., that the plaintiff's recovery is impossible by necessary consequence of law) because either (1) the causes of action in the petition are not recognized by Texas law, or (2) the plaintiff has alleged facts that defeat those causes of action under settled law (i.e., the plaintiff has pleaded itself out of court. In other words, a claim is foreclosed as a matter of law where recovery by the plaintiff is legally impossible.

3

*In re Shire PLC*, 633 S.W.3d 1, 19 (Tex. App.—Texarkana 2021, orig. proceeding [mand. denied]) (holding that denial of Rule 91(a) was proper based on having basis in law because defendant did not establish that plaintiff's claims were legally impossible and that defendants' authority did not bar claim).

The panel's misprision of the scope and effect of Rule 91a leads the panel to answer a question it has not been asked. It has not been asked to determine whether the facts of a case, determined by a jury after a trial on the merits, support the recognition of a duty borne by the defendant, and other defendants similarly situated. *See Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017) (cited by *Luminant Generation Co.*, 2023 WL 8630982, at *4, *7). Nor has it been asked, on permissive appeal, to write on a controlling question of law as to which there is a substantial ground for difference of opinion. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 146 (Tex. 2022) (cited by *Luminant Generation Co.*, 2023 WL 8630982, at *4, *8–9). Rather, it has been asked whether under Texas law the causes of action asserted below have been **foreclosed**. *See FarmersTex. Cnty. Mut.*, 621 S.W.3d at 276 ("Rather, our holding is limited to the scope of Farmers' Rule 91a motion and clarifies a narrow issue: *Stowers* and the other principles of Texas insurance law cited by Farmers do not **foreclose** as a matter of law a claim for breach of contract against an insurer regarding its indemnity obligation." (emphasis added)); *see Davis v. Homeowners of Am. Ins. Co.*, No. 05-

4

21-00092-CV, 2023 WL 3735115, at *4 (Tex. App.—Dallas May 31, 2023, no pet.) (holding that "there is nothing before us to suggest that the causes of action pleaded have no basis in law because they are not cognizable under Texas law," and "nothing within [plaintiff's] pleading itself triggers a clear legal bar to their claims").

To "foreclose" means to "debar, prevent, hinder, preclude." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002). There is no authority suggesting that the customers' causes of action have been foreclosed. The best the wholesalers (and the panel) can do is assert that the particular causes of action asserted have not been recognized under Texas law—but that assertion is pregnant with a "yet." *See Luminant Generation Co.*, 2023 WL 8630982, at *5 ("Indeed, we are not aware of any controlling Texas authority under this current statutory scheme, and the retail customers have cited none."). The mere fact that the panel engages in a *Phillips* analysis to determine whether the wholesalers owe the customers duties under tort law demonstrates that the causes of action have not been foreclosed. *Hous. Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 583 (Tex. 2023) (considering *Phillips* factors to determine whether common-law duty exists). Neither the Texas Supreme Court nor the Legislature have decided whether a wholesale power generator owes a legal duty to continuously supply electricity to the grid. Thus, Texas law does not foreclose the customers' causes of action.

Stated simply: if our Texas Supreme Court has announced a cause of action does not exist in a circumstance, that cause of action has been foreclosed, and such a claim would rightly be dismissed under Rule 91a.[1] If the Supreme Court has not so ruled, and the claim is colorable enough to provoke multiple pages of *Phillips* analysis from an intermediate court, that claim has not been foreclosed, and is not susceptible to 91a dismissal. Any other rule would be tantamount to requiring pre-approval of causes of action lest they be dismissed before getting substantively under way or discovery could even start. The common law would be stifled, and could no longer develop to account for new interrelationships created by our increasingly complex economy.

* * *

War hero, United State Supreme Court Justice, and one of the most profound thinkers to contemplate the purpose and functioning of the common law, Oliver Wendell Holmes observed that "[t]he life of the law has not been logic; it has been

---

[1]  Presumably, if Texas law indeed precludes or forecloses the customers' causes of action, the panel could have and would have said so. *See, e.g.*, *Bethel v. Quilling*, 595 S.W.3d 651, 656 (Tex. 2020) (holding that, taking the plaintiff's allegations as true, "the trial court determined that . . . [the plaintiff] was not entitled to the relief sought because attorney immunity barred . . . [plaintiff's] claims."); *In re Hous. Specialty Ins. Co.*, 569 S.W.3d 138, 139 (Tex. 2019) (orig. proceeding) (holding that because Supreme Court decision bars plaintiff's legal malpractice claim, claims have no basis in law); *In re Essex Ins. Co.*, 450 S.W.3d 524, 525–26 (Tex. 2014) (orig. proceeding) (holding that because Texas law "prohibits a plaintiff from suing a defendant's liability insurer . . . until the defendant's liability . . . has been established[,]" and there were disputes of whether plaintiff was an employee, Texas law bars this claim so there is no basis in law).

experience." Oliver Wendell Holmes, THE COMMON LAW 5 (Little, Brown and Company 1963). The common law is judge-made; it develops through judicial decisions issued over time. Published opinions set forth holdings and the rationales for them. These decisions then become the raw material for deciding the appeals that follow.

Development over time is one of the chief virtues of a common law system. "[I]nherent in the common-law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying common-law to new situations as the need arose." *Brigance v. Velvet Dove Rest., Inc.*, 725 P.2d 300 (Okla. 1986). "[I]t is the strength of the common law to respond, albeit cautiously and intelligently, to the demands of common-sense justice in an evolving society." *Madden v. Creative Servs.*, 646 N.E.2d 780 (N.Y. 1995).

The Texas Supreme Court has long recognized this principle:

As demonstrated by the actions of the majority of states, the common law is not frozen or stagnant, but evolving, and it is the duty of this court to recognize the evolution. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 310 (Tex. 1983). Indeed, it is well established that the adoption of the common law of England was intended "to make effective the provisions of the common law, so far as they are not inconsistent with the conditions and circumstances of our people." *Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124, 1125 (1913). Our courts have consistently made changes in the common law of torts as the need arose in a changing society. *See, e.g., Sanchez v. Schindler*,

7

651 S.W.2d 249 (Tex. 1983) (recovery of loss of society and mental anguish allowed in response to needs of modern society); *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978) (landowner's duty owed to tenants extends to guests); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex. 1967) (strict liability in tort expanded to include defective products); *Decker & Sons, Inc. v. Capps*, 139 Tex. 609, 164 S.W.2d 828 (1942) (manufacturer of impure food liable for injuries in absence of negligence as a matter of public policy); *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890) (recognition of cause of action for infliction of emotional and mental distress).

*El Chico Corp. v. Poole*, 732 S.W.2d 306, 310–11 (Tex. 1987) (superseded by statute by *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 682 (Tex. 2007). More recently, Justice Boyd again reaffirmed this principle in his dissenting opinion in *Houston Area Safety Council*:

> [W]e have not rejected our longstanding recognition that "changing social standards and increasing complexities of human relationships in today's society" may "justify imposing a duty" the common law has not previously imposed. It remains true today that, because our society and its standards are constantly changing, "the common law is not frozen or stagnant, but evolving, and it is the duty of this court to recognize the evolution." When prevailing norms favor a change in the law, it is this Court's duty to recognize the tidal shift.

*Houston Area Safety Council*, 671 S.W.3d at 605 (citations omitted).

Even when precedent is clear that a certain cause of action has been foreclosed, the common law allows that to change. The costs of imposing a duty might fall dramatically as a result of technological advancement; the costs of a breach of a duty might rise exponentially. Karl Llewellyn called this flexibility, this capacity for evolution "the leeways of precedent." Karl N. Llewellyn, THE

8

COMMON LAW TRADITION: DECIDING APPEALS 62–91 (Little, Brown and Co. 1960). He notes that existing precedent does not necessarily dictate an outcome. *Id.* at 62. According to Llewellyn, "only in times of stagnation or decay does an appellate system even faintly resemble such a picture of detailed dictation by precedents. . . ." *Id.*

The common law is concerned with the resolution of conflicts as they arise, and as society grows more complex, new and different types of conflicts emerge. Because it is more flexible, it encourages economic growth in a way that a civil law system, based on legislative prescriptions and proscriptions that determine outcomes before the conflicts arise, cannot. *See* Paul G. Mahoney, *The Common Law and Economic Growth: Hayek Might Be Right*, 30 JOURNAL OF LEGAL STUDIES 503–525 (2001); *see also* Rafael La Porta, Florencio Lopez-de-Silanes, Andrei Shleifer, *The Economic Consequences of Legal Origins*, National Bureau of Economic Research (November 2007), https://www.nber.org/system/files/working_papers/w13608/w13608.pdf. The common law's ability to grow and develop is not merely theoretically pleasing; it is also a crucial engine in economic growth. *See* Jim Harper, *Remember the Common Law*, Cato Institute (March/April 2016), https://www.cato.org/policy-report/march/april-2016/remember-common-law. Stifling the common law by not

allowing new duties and causes of action to develop over time will lead to legal ossification, and in turn economic stagnation.

* * *

The Texas Legislature rearranged the electricity generation and distribution markets in 2002, creating a raft of new economic relationships, benefits, duties, and obligations. Our common law should be allowed to grow to accommodate those changes. The panel's holding prevents that growth. Accordingly, I dissent from this Court's denial of the motions for en banc reconsideration.


Peter Kelly
Justice


The en banc court consists of Chief Justice Adams and Justices Kelly, Landau, and Hightower.

Justices Goodman, Countiss, Rivas-Molloy, Guerra, and Gunn, not sitting.

Justice Kelly, dissenting to the denial of en banc reconsideration.